# CHIN BAK KAN *v.* UNITED STATES.
# CHIN YING *v.* UNITED STATES.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF NEW YORK.

Nos. 525, 526.   Argued March 13, 14, 1902.—Decided June 2, 1902.

The ruling in *United States* v. *Lee Yen Tai*, 185 U. S. 213, affirmed.

The legislation considered, the act of May 5, 1892, is satisfied by proceedings before a United States commissioner.

It was competent for Congress to empower a United States commissioner to determine the various facts on which citizenship depends under the decision in *United States* v. *Wong Kim Ark*, 169 U. S. 649.

The same reasoning with respect to the authority to exclude applies to the authority to expel, and the policy of the legislation in respect to exclusion and expulsion is opposed to numerous appeals.

COMPLAINT under oath was duly made before a commissioner of the United States for the Northern District of New York, charging "that Chin Bak Kan did, on or about the 13th day of March, 1901, at Burke in said district, knowingly and wrongfully come from Canada, in the province of Quebec, into the Northern District of New York, to wit: into Burke in the county of Franklin and State of New York, in the United States, he, the said Chin Bak Kan being then and there a Chinese person and laborer, and a person prohibited by the laws of the United States of America from being and remaining in the United States, and he, the said Chin Bak Kan, then and there being such Chinese person as aforesaid, was then and there found unlawfully in the United States at Burke aforesaid, in violation of the acts of the Congress in such case made and provided."

A warrant for the apprehension of Chin Bak Kan was issued March 13, 1901, and he was arrested and brought before the commissioner. He was informed of the charge against him, advised that he would be permitted to make a statement without or with oath, or to refuse to make any statement or to an-

swer any question put to him, and was entitled to reasonable time to send for counsel and procure the attendance of witnesses. He pleaded not guilty to the charge, " but admitted that he had just come into the United States." He was thereafter represented by counsel. Subsequently a hearing and trial was commenced before the commissioner who issued the warrant. That officer having been taken sick, the hearing was continued and concluded before another commissioner, who found and adjudged upon the evidence as follows : " I now hereby find and adjudge that the said Chin Bak Kan is a Chinese person and laborer, that he is not a diplomatic or other officer of the Chinese or any other government, and unlawfully entered the United States, as charged in said complaint. And I further adjudge him, said Chin Bak Kan, guilty of not being lawfully entitled to be or remain in the United States. I further find and adjudge that he, said Chin Bak Kan, came from the Empire of China, but he has not made it appear to me that he was a subject or citizen of some other country than China. And I hereby order and adjudge said Chin Bak Kan to be immediately removed from the United States to the Empire of China. A certified copy of this judgment shall be the process upon which said removal of said Chin Bak Kan shall be made from the United States to the Empire of China. And said process shall be executed by the Hon. C. D. MacDougall, United States marshal for said district."

An appeal was prosecuted to the District Court of the United States for the Northern District of New York, but the appeal was dismissed and the judgment for the deportation of the defendant was affirmed.

From the final order of the District Court an appeal was then taken to this court.

*Mr. Max J. Kohler* for Chin Bak Kan and Chin Ying.

*Mr. Assistant Attorney General Hoyt* for the United States.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

By section one of the act of May 6, 1882, 22 Stat. 58, c. 126,

it was provided that from and after the expiration of ninety days, and until the expiration of ten years, the coming of Chinese laborers to the United States should be suspended, and during such suspension it was made unlawful for any Chinese laborer to come, or, having come after the expiration of said ninety days, to remain within the United States.

By section four provision was made for certificates to be granted to such Chinese as were entitled under the treaty of November 17, 1880, to go from, or come to, the United States, of their free will and accord, in order to identify them.

The twelfth section of the act was as follows: " That no Chinese person shall be permitted to enter the United States by land without producing to the proper officer of customs the certificate in this act required of Chinese persons seeking to land from a vessel. And any Chinese person found unlawfully within the United States shall be caused to be removed therefrom to the country from whence he came, by direction of the President of the United States, and at the cost of the United States, after being brought before some justice, judge, or commissioner of a court of the United States and found to be one not lawfully entitled to be or remain in the United States."

This section was amended by the act of July 5, 1884, 23 Stat. 115, c. 220, so as to read as follows: " That no Chinese person shall be permitted to enter the United States by land without producing to the proper officer of customs the certificate in this act required of Chinese persons seeking to land from a vessel. And any Chinese person found unlawfully within the United States shall be caused to be removed therefrom to the country from whence he came, and at the cost of the United States, after being brought before some justice, judge, or commissioner of a court of the United States and found to be one not lawfully entitled to be or to remain in the United States ; and in all such cases the person who brought or aided in bringing such person to the United States shall be liable to the government of the United States for all necessary expenses incurred in such investigation and removal; and all peace officers of the several States and Territories of the United States are hereby invested with the same authority as a marshal or

United States marshal in reference to carrying out the provisions of this act or the act of which this is amendatory, as a marshal or deputy marshal of the United States, and shall be entitled to like compensation to be audited and paid by the same officers. And the United States shall pay all costs and charges for the maintenance and return of any Chinese person having the certificate prescribed by law as entitling such Chinese person to come into the United States, who may not have been permitted to land from any vessel by reason of any of the provisions of this act."

By section one of the act of May 5, 1892, 27 Stat. 25, c. 60, it was provided : " That all laws now in force prohibiting and regulating the coming into this country of Chinese persons and persons of Chinese descent are hereby continued in force for the period of ten years from the passage of this act."

Sections two, three and six were as follows :

" Sec. 2. That any Chinese person or person of Chinese descent, when convicted and adjudged under any said laws to be not lawfully entitled to be or remain in the United States, shall be removed from the United States to China, unless he or they shall make it appear to the justice, judge, or commissioner before whom he or they are tried that he or they are subjects or citizens of some other country, in which case he or they shall be removed from the United States to such country : *Provided*, That in any case where such other country of which such Chinese person shall claim to be a citizen or subject shall demand any tax as a condition of the removal of such person to that country, he or she shall be removed to China.

" Sec. 3. That any Chinese person or person of Chinese descent arrested under the provisions of this act or the acts hereby extended shall be adjudged to be unlawfully within the United States unless such person shall establish, by affirmative proof, to the satisfaction of such justice, judge, or commissioner, his lawful right to remain in the United States."

" Sec. 6. And it shall be the duty of all Chinese laborers within the limits of the United States, at the time of the passage of this act, and who are entitled to remain in the United States, to apply to the collector of internal revenue of their re-

spective districts, within one year after the passage of this act, for a certificate of residence, and any Chinese laborer, within the limits of the United States, who shall neglect, fail, or refuse to comply with the provisions of this act, or who, after one year from the passage hereof, shall be found within the jurisdiction of the United States without such certificate of residence, shall be deemed and adjudged to be unlawfully within the United States, and may be arrested, by any United States customs official, collector of internal revenue or his deputies, United States marshal or his deputies, and taken before a United States judge, whose duty it shall be to order that he be deported from the United States as hereinbefore provided, unless he shall establish clearly to the satisfaction of said judge, that by reason of accident, sickness or other unavoidable cause, he has been unable to procure his certificate, and to the satisfaction of the court, and by at least one credible white witness, that he was a resident of the United States at the time of the passage of this act; and if upon the hearing, it shall appear that he is so entitled to a certificate, it shall be granted upon his paying the cost.

" Should it appear that said Chinaman had procured a certificate which has been lost or destroyed, he shall be detained and judgment suspended a reasonable time to enable him to procure a duplicate from the officer granting it, and in such cases, the cost of said arrest and trial shall be in the discretion of the court.

" And any Chinese person other than a Chinese laborer, having a right to be and remain in the United States, desiring such certificate as evidence of such right may apply for and receive the same without charge."

Section six was amended by the act of November 3, 1893, 28 Stat. 7, c. 14.

Article I of the treaty with China, proclaimed November 8, 1894, 28 Stat. 1210, was: " The high contracting parties agree that for a period of ten years, beginning with the date of the exchange of the ratifications of this convention, the coming, except under the conditions hereinafter specified, of Chinese laborers to the United States shall be absolutely prohibited."

Article II provided: " The preceding article shall not apply

to the return to the United States of any registered Chinese laborer who has a lawful wife, child, or parent in the United States, or property therein of the value of one thousand dollars, or debts of like amount due him and pending settlement. . . . And no such Chinese laborer shall be permitted to enter the United States by land or sea without producing to the proper officer of the customs the return certificate herein required."

Article V : " The government of the United States, having by an act of the Congress, approved May 5, 1892, as amended by an act approved November 3, 1893, required all Chinese laborers lawfully within the limits of the United States before the passage of the first named act to be registered as in said act provided, with a view of affording them better protection, the Chinese government will not object to the enforcement of such acts, and reciprocally the government of the United States recognizes the right of the government of China to enact and enforce similar laws or regulations for the registration, free of charge, of all laborers, skilled or unskilled, (not merchants as defined by said acts of Congress,) citizens of the United States in China, whether residing within or without the treaty ports."

In *United States* v. *Lee Yen Tai*, 185 U. S. 213, just decided, the question was propounded to us by the Circuit Court of Appeals for the Second Circuit on certificate : " Is section 12 of ' An act to execute certain treaty stipulations relating to the Chinese, approved May 6, 1882,' as amended by section 3 of the amendatory act of July 5, 1884, repealed by the treaty or convention with China of December 8, 1894 ? " and that question we answered in the negative.

The act of March 3, 1901, 31 Stat. 1093, c. 845, provides:

" That it shall be lawful for the district attorney of the district in which any Chinese person may be arrested for being found unlawfully within the United States, or having unlawfully entered the United States, to designate the United States commissioner within such district before whom such Chinese person shall be taken for hearing.

" Sec. 2. That a United States commissioner shall be entitled to receive a fee of five dollars for hearing and deciding a case arising under the Chinese exclusion laws.

"SEC. 3. That no warrant of arrest for violations of the Chinese exclusion laws shall be issued by the United States commissioners excepting upon the sworn complaint of a United States district attorney, assistant United States district attorney, collector, deputy collector, or inspector of customs, immigration inspector, United States marshal, or deputy United States marshal, or Chinese inspector, unless the issuing of such warrant of arrest shall first be approved or requested in writing by the United States district attorney of the district in which issued."

The errors assigned may be grouped into those which presented the question of the effect of the treaty of 1894 by way of repeal, and these have been disposed of by our decision in *United States* v. *Lee Yen Tai,* 185 U. S. 213; those in respect of the assertion of citizenship and the action taken thereon ; and certain objections of want of jurisdiction because of insufficiency of the complaint. The latter relate to lack of positive averment of the facts, and as to the official character of the person who made the complaint. The complaint was made by one Ketchum, and, although it was not therein stated, it appears from the official register of the government that he was a Chinese inspector, and as such authorized under the statute.

The charge was made on information and belief, but no objection was raised to the complaint on that ground, and we think the ruling in *Fong Yue Ting* v. *United States,* 149 U. S. 729, applies that defects in complaint or pleadings do not affect the authority of the commissioner or judge or the validity of the statute.

Something is said in respect of want of jurisdiction in the commissioner because section six of the act of 1892 provides that Chinese laborers without certificates may be "taken before a United States judge;" but we concur in the views of the Circuit Court of Appeals for the Ninth Circuit in *Fong Mey Yuk* v. *United States,* 113 Fed. Rep. 898, that the act is satisfied by proceeding before "a justice, judge, or commissioner." These are the words used in section twelve of the act of 1882; section twelve of the act of 1884; section thirteen of the act of 1888 ; and section three of the act of 1892; while the first sec-

tion of the act of March 3, 1901, explicitly authorizes the district attorney to designate the commissioner before whom the Chinese person may be brought. The words "United States judge," "judge" and "court," in section six, seem to us to refer to the tribunal authorized to deal with the subject, whether composed of a justice, a judge, or a commissioner. A United States commissioner is a *quasi* judicial officer, and in these hearings he acts judicially. Moreover, this case was taken by appeal from the commissioner to the judge of the district court, and his decision was affirmed, so that there was an adjudication by a United States judge in the constitutional sense as well as by the commissioner acting as a judge in the sense of the statute.

But it is argued that the commissioner had no jurisdiction to act because the claim of citizenship was made. The ruling in *United States* v. *Wong Kim Ark*, 169 U. S. 649, was to this effect: " A child born in the United States, of parents of Chinese descent, who, at the time of his birth, are subjects of the Emperor of China, but have a permanent domicil and residence in the United States, and are there carrying on business, and are not employed in any diplomatic or official capacity under the Emperor of China, becomes at the time of his birth a citizen of the United States." It is impossible for us to hold that it is not competent for Congress to empower a United States commissioner to determine the various facts on which citizenship depends under that decision.

By the law the Chinese person must be adjudged unlawfully within the United States unless he " shall establish by affirmative proof, to the satisfaction of such justice, judge, or commissioner, his lawful right to remain in the United States." As applied to aliens there is no question of the validity of that provision, and the treaty, the legislation, and the circumstances considered, compliance with its requirements cannot be avoided by the mere assertion of citizenship. The facts on which such a claim is rested must be made to appear. And the inestimable heritage of citizenship is not to be conceded to those who seek to avail themselves of it under pressure of a particular exigency, without being able to show that it was ever possessed.

Section thirteen of the act of September 13, 1888, provides that any Chinese person, or person of Chinese descent, found unlawfully in the United States, may be arrested on a warrant issued upon a complaint under oath, " by any justice, judge, or commissioner of any United States court," and when convicted, on a hearing, and found and adjudged to be one not lawfully entitled to be or remain in the United States, shall be removed to the country whence he came. " But any such Chinese person convicted before a commissioner of the United States court may, within ten days from such conviction, appeal to the judge of the District Court for the district."

It seems to have been assumed, during the years following the date of the act, and is conceded by the United States, that although most of its provisions were dependent upon the ratification of the treaty of March 12, 1888, and failed with the failure of ratification, that this section is in and of itself independent legislation and in force as such. Accordingly in this case an appeal was taken from the judgment of deportation rendered by the commissioner to the judge of the District Court of the United States for the Northern District of New York, and, upon hearing, the District Court affirmed that judgment. From the judgment of the District Court, this appeal was taken under section five of the act of March 3, 1891, on the ground that the construction of the treaty of 1894 was drawn in question. Except in cases under that section where the question of jurisdiction alone is certified, we have power to dispose of the entire case, but as the jurisdiction of the commissioner is sustained, we are of opinion that we cannot properly reëxamine the facts already determined by two judgments below. That is the general rule, and there is nothing to take this case out of its operation, and, on the contrary, the conclusion is, *a fortiori*, justified. The same reasoning in respect to the authority to exclude applies to the authority to expel, and the policy of the legislation in respect to exclusion and expulsion is opposed to numerous appeals. And we are not disposed to hold that where a Chinese laborer has evaded the executive jurisdiction at the frontier and got into the country, he is therefore entitled to demand repeated rehearings on the facts.

*Judgment affirmed.*