**In re MOY QUONG SHING et al.**

(District Court, D. Vermont. October 6, 1903.)

1. ALIENS—CHINESE—DEPORTATION—HABEAS CORPUS — DETENTION — AUTHOR-
ITY.
 Under Act Cong. Feb. 14, 1903, c. 552, § 7, 32 Stat. 828 [U. S. Comp. St.
 Supp. 1903, p. 46], placing jurisdiction of the deportation of aliens in the
 Department of Commerce and Labor, a return to a writ of habeas corpus
 by an alleged Chinese alien, showing that defendant was an officer of im-
 migration under control of the commissioner general in charge of the
 port where the alien attempted to enter, by designation of the Secretary
 of Commerce and Labor, and that he held such Chinese person as such
 officer, sufficiently showed authority for the detention.

2. SAME—PLACE OF BIRTH — DETERMINATION — JURISDICTION OF EXECUTIVE
OFFICERS.
 Under Act Cong. Feb. 14, 1903, c. 552, § 7, 32 Stat. 828 [U. S. Comp. St.
 Supp. 1903, p. 46], giving the Department of Commerce and Labor juris-
 diction of the admission of aliens, and authorizing such department to
 prescribe rules and regulations for the determination of the rights of
 aliens to admission, the executive officers of such department had author-
 ity to determine whether or not a Chinese person seeking admission had
 been born in the United States, and was therefore a citizen entitled to
 enter.

3. SAME—RULES.
 Under Act Cong. Feb. 14, 1903, c. 552, § 7, 32 Stat. 828 [U. S. Comp.
 St. Supp. 1903, p. 46], placing jurisdiction of the admission of aliens in
 the Department of Commerce and Labor, such department had authority
 to prescribe rules of evidence relating to presumptions and burden of
 proof in the determination of an alien's right to admission.

On Habeas Corpus.

Fuller C Smith, for relators.

James L. Martin, U. S. Atty.

WHEELER, District Judge. The persons detained are of the
Chinese race, lately from China, and are restrained of their liberty
at the port of Richford, where they sought to enter this country.
The petition set forth restraint in a detention house by persons act-
ing as officers of the United States, and challenged their authority
and the legality of their proceedings. The return of the petitionee,
Weeks, shows that he is an officer of immigration, detaining the
men under direction of Officer Schell, whose return, filed by leave of
court, shows that he is an officer of immigration under control
of the commissioner general in charge of this port by designation
of the Secretary of Commerce and Labor. This seems to show regu-
lar and sufficient authority, within Act Feb. 14, 1903, c. 552, § 7, 32
Stat. 828 [U. S. Comp. St. Supp. 1903, p. 46], placing jurisdiction in
the Department of Commerce and Labor.

The proofs show that the men came by train, and presented them-
selves for admission, and, when reached, were informed that they
would then be examined as to their right to come in, and that, being
questioned through an interpreter, they said they had been told by

1. Citizenship of Chinese, see notes to Gee Fook Sing v. United States, 1
C. C. A. 212; Lee Sing Far v. United States, 35 C. C. A. 332.

their parents that they were born in the United States, of which they had no recollection, and claimed to come in as native-born citizens. That such citizen, of whatever race, on arriving at a port of this country, is entitled to come in, is not questioned or questionable. The contention now is that when such a claim is made the executive officers have not authority to pass upon it, and that it must go for decision, if denied, to courts or judicial officers on some proper proceeding, of which this is said to be one. That the legislative department may exclude any race, or classes of any race, not citizens, from the country, and identify and return those not entitled to come by executive as well as judicial officers, seems to be too well settled by numerous and uniform decisions of the Supreme Court to require or warrant citations. And in Chin Bak Kan v. United States, 186 U. S. 193, 22 Sup. Ct. 891, 46 L. Ed. 1121, Mr. Chief Justice Fuller, for the court, said, after referring to United States v. Wong Kim Ark, 169 U. S. 649, 18 Sup. Ct. 456, 42 L. Ed. 890, where it was held that Chinese persons born in the United States are citizens:

"It is impossible for us to hold that it is not competent for Congress to empower a United States commissioner to determine the various facts on which citizenship depends under that decision."

It seems equally impossible to hold that, when Congress can commit the execution of the law, and the decision of questions arising therein, to the decision of executive officers, it cannot also include the fact as to place of birth. The judicial powers of a commissioner are wholly conferred by act of Congress, and power to decide questions arising in executive proceedings may as well be conferred upon executive officers as upon others. These questions as to the place of birth of these applicants arose for decision with other questions before this officer, and no other way but for him to decide them is made apparent.

It is claimed that the proceedings of this immigration officer, Schell, did not so conform to the rights of the applicants that the detention pursuant thereto was lawful. In the Japanese Immigrant Case, 189 U. S. 86, 23 Sup. Ct. 611, 47 L. Ed. 721 (at page 100, 189 U. S., page 614, 23 Sup. Ct., 47 L. Ed. 721), Mr. Justice Harlan said:

"But this court has never held, nor must we now be understood as holding, that administrative officers when executing the provisions of a statute involving the liberty of persons, may disregard the fundamental principles that inhere in 'due process of law,' as understood at the time of the adoption of the Constitution. One of these principles is that no person shall be deprived of his liberty without opportunity at some time to be heard before such officers in respect of the matters upon which that liberty depends—not necessarily an opportunity upon a regular, set occasion, and according to the forms of judicial procedure, but one that will secure the prompt, vigorous action contemplated by Congress, and at the same time be appropriate to the nature of the case upon which such officers are required to act. Therefore it is not competent for the Secretary of the Treasury or any executive officer, at any time within the year limited by the statute, arbitrarily to cause an alien who has entered the country, and has become subject in all respects to its jurisdiction and a part of its population, although alleged to be illegally here, to be taken into custody and deported without giving him all opportunity to be heard upon the questions involving his right to be and remain in the United States. No such arbitrary power can exist where the principles involved in due process of law are recognized."

It appears that the immigration officer is governed by Chinese regulations made by the Department of Commerce and Labor, among which are:

"Rule 6. Immediately upon the arrival of Chinese persons at any port mentioned in rule 4 it shall be the duty of the officer in charge of the administration of the Chinese exclusion laws to adopt suitable means to prevent communication with them by any persons other than officials under his control, to have said Chinese persons examined promptly as by law provided, touching their rights to admission, and to permit those proving such right to land.

"Rule 7. The examination prescribed in rule 6 should be separate and apart from the public, in the presence of government officials and such witness or witnesses only as the examining officer shall designate, and, if, upon the conclusion thereof, the Chinese applicant for admission is adjudged to be inadmissible, he should be advised of his right of appeal, and his counsel should be permitted, after duly filing notice of appeal, to examine, but not to make copies of, the evidence upon which the excluding decision is based."

"Rule 21. The burden of proof in all cases rests upon Chinese persons claiming the right of admission to, or residence within, the United States, to establish such right affirmatively and satisfactorily to the appropriate government officers, and in no case in which the law prescribes the nature of the evidence to establish such right shall other evidence be accepted in lieu thereof, and in every doubtful case the benefit of the doubt shall be given by administrative officers to the United States government."

It also appears that in these cases the officer in charge, with commendable care, informed each applicant that other witnesses would be heard and sent for, if there were any, and that no claim was made that there were any.

In the Japanese Immigrant Case, Mr. Justice Harlan further said:

"The traverse to the return made by the immigration inspector shows upon its face that she was before that officer pending the investigation of her right to be in the United States, and made answers to questions propounded to her. It is true that she pleads a want of knowledge of our language, that she did not understand the nature and import of the questions propounded to her, that the investigation made was a 'pretended one,' and that she did not at the time know that the investigation had reference to her being deported from the country. These considerations cannot justify the intervention of the courts."

Here the applicants presented themselves for examination for admission, and were held till, and were present when, it was had, and knew what was going on. They came for the examination, and should have come prepared with any evidence they had and wished to introduce to maintain their claims. That others were kept from them before or during the examination, or any prejudice to them in consequence of the rule, is not shown. They had, so far as appears, all the examination they wanted.

The rule of evidence prescribed may put upon the applicants more than proof to the satisfaction of the officer, and require that beyond doubt; but the rules of evidence go with the authority to decide, and are included in it, and their correctness or their application furnishes no ground for interference.

Persons remanded.