## In re SING TUCK.

### (Circuit Court, N. D. New York. November 30, 1903.)

**1. CONSTITUTIONAL LAW—EXERCISE OF JUDICIAL FUNCTIONS BY EXECUTIVE OFFICER—DETERMINING CITIZENSHIP OF IMMIGRANT.**

Congress is without power, under the Constitution, to commit to the executive department of the government the right to determine finally the question of the citizenship of a person applying for admission into the United States; but under its power to exclude aliens it may properly commit the question in the first instance to the immigration officers, with plenary power to determine the facts on which citizenship depends, in doing which they act in a quasi judicial capacity, although not vested with any of the judicial power of the United States in a constitutional sense; and it is also competent to provide for an appeal from such decision to the head of an executive department, whose decision shall be final, and that if no appeal is taken the determination of the inferior officer shall be final.

**2. SAME.**

The Supreme Court of the United States has decided what facts must exist to constitute a Chinese person born within the United States a citizen thereof, and as the Department of Commerce and Labor is charged by the Constitution with the regulation of interstate and foreign commerce, including the coming of persons into the United States, Congress may devolve on the officers of that department the power to determine the existence or nonexistence of the facts on which the right to enter the United States depends. As such persons have a tribunal in which to be heard, a hearing on notice, with opportunity to present evidence, a judgment, and the right of appeal, all according to the law of the land, they are not denied due process of law.

**3. CHINESE EXCLUSION—DETERMINING QUESTION OF CITIZENSHIP—CONCLUSIVENESS OF DECISION.**

Where Chinese persons applying for admission to the United States either make no claim to citizenship therein to the immigration inspector, or, if making such claim, fail or refuse to introduce any evidence in support thereof, the burden of which is cast upon them by the statute, the adverse decision of the inspector on their right to enter, if not appealed from, is conclusive, and they are not entitled to raise the question of citizenship in the courts by proceedings in habeas corpus.

Habeas Corpus. On motion to dismiss writ.

R. M. Moore, for petitioners.
George B. Curtiss, U. S. Atty., for respondent.

RAY, District Judge. The petitioners, Chinese persons, 32 in number, apply for discharge from custody in the detention house at Malone, N. Y., on habeas corpus, alleging that they are citizens of the United States, illegally restrained of their liberty and illegally detained by Thomas Darcy, Chinese inspector of the United States of America, at Malone, N. Y., in what is known as "The Detention House." The petition for the writ is made by the attorney for the petitioners on information and belief.

It is admitted that the petitioners are Chinese persons; that they came from China, and applied for admission into the United States at the port of Malone, N. Y., and were denied admission by the

¶ 1. Citizenship of the Chinese, see notes to Gee Fook Sing v. United States, 1 C. C. A. 212; Lee Sing Far v. United States, 35 C. C. A. 332.

executive officers of the government of the United States duly authorized to act and acting under and by virtue of the Chinese exclusion laws, on the ground that they are citizens of China and not of the United States, and not shown to be within the classes entitled to admission. The petitioners were duly notified of their right to appeal, from the decision refusing them admission, to the Secretary of Commerce and Labor of the United States. The petitioners have taken no appeal, but swear out a writ of habeas corpus in this court, alleging that they were born in the United States under circumstances making them citizens of the United States, and that, as such, they have the right to have that fact tried and determined in the courts of the United States and by the judicial department of the government, and that this question of citizenship cannot be determined by the executive officers of the government, at least so as to bind them and deprive them of their right to appeal to the courts for a due trial and determination of that question of fact; that "due process of law" guaranties them this right. When they applied for admission, 26 of the petitioners stated that they were Chinese persons, and made application for entry, but refused to answer any other questions touching their right to enter. The other petitioners, 6 in number, stated that they were Chinese persons, applied for entry into the United States, and also stated that they were born within the United States, and refused to answer any other questions. No one of the petitioners offered to show citizenship, or to comply with the law relating to the entrance of Chinese persons into the United States. The return to the writ shows the above facts, but denies that the petitioners are citizens of the United States or were born therein, and alleges, in effect, that the determination of the immigration officers and Chinese inspectors, not appealed from, is final and conclusive on the question of citizenship, as well as all others involved, and that that question was necessarily involved and adjudicated in the determination made. On the return of the proceedings under the writ, the United States District Attorney for the Northern District of New York, intervening in behalf of the United States, and appearing in behalf of said Chinese inspector, to whom the writ was directed, moved that the writ be dismissed, and the petitioners remanded, on the following grounds:

"First. This court has no jurisdiction to review the determination of the immigration officers of the United States in denying to the petitioners herein the right to enter the United States.

"Second. That the determination of the immigration officers on the question of the right of the petitioners to enter the United States is final and conclusive, no appeal having been taken therefrom to the Secretary of Commerce and Labor.

"Third. That it is not established by the petition and return that the petitioners, or any of them, have a lawful right to enter the United States.

"Fourth. That the facts set forth in the petition and return show that the petitioners have no legal right to enter the United States.

"Fifth. That the petitioners are not unlawfully detained or deprived of their liberty."

This court will take testimony and determine the question of citizenship unless the decision of the inspector, acting under the Commissioner General of Immigration and the Secretary of Commerce and Labor, not appealed from, is final and conclusive, res adjudicata,

on the question of the citizenship of the petitioners, provided that question has been properly raised and presented by the record.

The one question is, has Congress the constitutional power to confer upon the executive department, the executive officers of the government, jurisdiction to try and finally determine adversely the question whether a person seeking to enter the United States is a citizen thereof, and as such entitled to enter? Is this a political question? The other question is, have the petitioners, or either of them, placed themselves in a position to raise this question of citizenship in this court?

That Congress has full authority to confer upon the executive officers of the government plenary power to exclude and deport aliens of any nationality is settled. Fong Yue Ting v. United States, 149 U. S. 698, 13 Sup. Ct. 1016, 37 L. Ed. 905; Wong Wing v. United States, 163 U. S. 228, 16 Sup. Ct. 977, 41 L. Ed. 140; Chae Chan Ping v. United States, 130 U. S. 581, 9 Sup. Ct. 623, 32 L. Ed. 1068; Nishimura Ekiu v. United States, 142 U. S. 651–659, 12 Sup. Ct. 336, 35 L. Ed. 1146; Japanese Immigrant Case, 189 U. S. 86, 23 Sup. Ct. 611, 47 L. Ed. 721; Lem Moon Sing v. United States, 158 U. S. 538, 15 Sup. Ct. 967, 39 L. Ed. 1082.

It is claimed that the power to exclude and deport aliens necessarily includes the power to try and determine the question whether the person excluded or proceeded against is an alien. While Congress has the power to provide for the exclusion and deportation of aliens, and may fix the terms and conditions on which aliens may enter the United States, or remain; being here, and also has the power to confer the authority to determine whether those terms and conditions have been complied with on executive officers of the government, it does not necessarily follow that, for purposes of exclusion or deportation, the power to determine who are aliens and who are citizens may be conferred by Congress on the executive officers or executive department of the government.

The one question is whether persons conceded to be aliens shall be admitted at all, or on or under certain conditions, the existence of which conditions is matter of proof, or deported if certain conditions have not been complied with, etc., and in no sense determines or adjudges the question of citizenship, which is not in issue, while the other question is one that involves the status, liberty, and property rights of the person or persons refused admission or proceeded against. A citizen has the right to live in the country of which he is a citizen, to go and come as he pleases, even to go to and return from a foreign country if he conforms to the quarantine and other laws on the subject, and to own property and exercise many rights not belonging to an alien, unless banished as a punishment for crime. The right to refuse all aliens admission into the United States is conceded. A citizen of the United States cannot constitutionally be refused admission. Aliens found in the United States may be deported simply because they are aliens. A citizen of the United States cannot in any event lawfully be deported unless as a punishment for crime of which he has been duly convicted after a fair trial by the judicial department of the government. Nor can he be

excluded from the country. As an attribute of sovereignty, a sovereign nation, as a means of self-preservation, both in times of war and times of peace, must have, and has, the right to determine who shall be citizens thereof, and what persons, not being citizens, shall be permitted to enter or reside within its territorial limits, and also fix the terms and conditions on which such persons may remain, and also change them at will. But, once admitted to citizenship in the United States, the person so admitted becomes a party to the Constitution, entitled to the benefits of its guaranties of protection according to and under the laws adopted in conformity thereto. At first blush it would seem clear that a person claiming to be a citizen of the United States has the right to have that alleged fact, if disputed under circumstances involving his liberty and property rights, determined in the courts and according to the established rules and forms of legal procedure. If not so, then any citizen may be deported—in effect banished from the United States—if it is charged that he is an alien, and laws excluding and deporting all aliens are enacted, on the judgment of any executive officer on whom Congress may see fit to devolve the determination of the question of expulsion, etc., and consequently that of citizenship. If no appeal is provided, such judgment would be final and conclusive, and the form or mode of trial (in the absence of legislative enactment) might depend on the mere whim or caprice of the executive officer clothed with power in the premises. Has any decision of the Supreme Court of the United States gone to the extent of holding any such doctrine? It may be well to cite some of the cases and quote the language of the court.

In the Nishimura Case, 142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146, the court said:

"It is not within the province of the judiciary to order that foreigners who have never been naturalized, nor acquired any domicile or residence within the United States, nor even been admitted into the country pursuant to law, shall be permitted to enter, in opposition to the constitutional and lawful measures of the legislative and executive branches of the national government. As to such persons, the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law."

In Lem Moon Sing v. United States, 158 U. S. 538, 15 Sup. Ct. 967, 39 L. Ed. 1082, the court said:

"The power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications."

In Fok Yung Yo v. United States, 185 U. S. 296–305, 22 Sup. Ct. 686, 690, 46 L. Ed. 917, the court said:

"Congressional action has placed the final determination of the right of admission in executive officers, without judicial intervention, and this has been for many years the recognized and declared policy of the country."

In that case it was admitted that the petitioner was a subject of the empire of China. On his arrival at the port of San Francisco

he stated that he intended to pursue his journey to San Jose de Guatemala. The collector refused to permit him to proceed further. Habeas corpus proceedings were then instituted. No question of citizenship was involved in that case, and it is clear, under the decisions, that the action of the executive officers was final and conclusive.

In the Japanese Immigrant Case, 189 U. S. 86, 23 Sup. Ct. 611, 47 L. Ed. 721, the court held:

"(2) It has been firmly established by numerous decisions of this court that it is within the constitutional power of Congress to exclude aliens of a particular race from the United States, prescribe the terms and conditions upon which certain classes may come to this country, establish regulations for sending out of the country such aliens as come here in violation of law, and commit the enforcement of such provisions, conditions, and regulations to executive officers, without judicial intervention.

"(3) An administrative officer, when executing the provisions of a statute involving the liberty of persons, may not disregard the fundamental principles of due process of law as understood at the time of the adoption of the Constitution. Nor is it competent for any executive officer, at any time within the year limited by the statute, to arbitrarily cause an alien who has entered the country, and has become subject in all respects to its jurisdiction, and a part of its population, although illegally here, to be arrested and deported without giving such alien an opportunity, appropriate to the case, to be heard upon the questions involving his right to be and remain in the United States.

"Where, however, the alien had notice, although not a formal one, the courts cannot interfere with the executive officers conducting it. The objections of the alien to the form of the investigation could have been presented to the officer having primary control of the case, or by an appeal to the Secretary of the Treasury, and the action of the executive officers is not subject to judicial review."

But here no question of citizenship was involved.

In Wong Wing v. United States, 163 U. S. 228, 16 Sup. Ct. 977, 41 L. Ed. 140, it was decided:

"Detention or temporary confinement, as part of the means necessary to give effect to the exclusion or expulsion of Chinese aliens, is valid. The United States can forbid aliens from coming within their borders, and expel them from their territory, and can devolve the power and duty of identifying and arresting such persons upon executive or subordinate officials; but when Congress sees fit to further promote such a policy by subjecting the persons of such aliens to infamous punishment at hard labor, or by confiscating their property, such legislation, to be valid, must provide for a judicial trial to establish the guilt of the accused."

The court, in its opinion, said:

"We regard it as settled by our previous decisions that the United States can, as a matter of public policy, by congressional enactment, forbid aliens or classes of aliens from coming within their borders, and expel aliens or classes of aliens from their territory, and can, in order to make effectual such decree of exclusion or expulsion, devolve the power and duty of identifying and arresting the persons included in such decree, and causing their deportation, upon executive or subordinate officials."

In using the word "identifying," did the court mean to be understood as holding that it is competent for Congress to devolve upon executive officials the power to ascertain and determine who are and who are not aliens?

In Nishimura Ekiu v. United States, 142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146, it was decided:

"The act of March 3, 1891, c. 551 [26 Stat. 1084; U. S. Comp. St. 1901, p. 1294], forbidding certain classes of alien immigrants to land in the United States, is constitutional and valid.

"Upon a writ of habeas corpus, if sufficient ground for the prisoner's detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment.

"Inspectors of immigration under the act of March 3, 1891, c. 551 [26 Stat. 1084, U. S. Comp. St. 1901, p. 1294], are to be appointed by the Secretary of the Treasury.

"The decision of an inspector of immigration, within the authority conferred upon him by the act of March 3, 1891, c. 551 [26 Stat. 1084. U. S. Comp. St. 1901, p. 1294], that an alien immigrant shall not be permitted to land, because within one of the classes specified in that act, is final and conclusive against his right to land, except upon appeal to the Commissioner of Immigration and the Secretary of the Treasury; and cannot be reviewed on habeas corpus, even if it is not shown that the inspector took or recorded any evidence on the question."

In this case there was no pretense that the petitioner was a citizen of the United States.

In United States v. Jung Ah Lung, 124 U. S. 621, 8 Sup. Ct. 663, 31 L. Ed. 591, the headnotes are as follows:

"A Chinese laborer, who resided in the United States on November 17, 1880, continued to reside there till October 24, 1883, when he left San Francisco for China, taking with him a certificate of identification issued to him by the collector of that port, in the form required by the fourth section of the act of May 6, 1882, c. 126, 22 Stat. 58, which was stolen from him in China, and remained outstanding and uncanceled. Returning from China to San Francisco by a vessel, he was not allowed by the collector to land, for want of the certificate, and was detained in custody in the port, by the master of the vessel, by direction of the customs authorities. On a writ of habeas corpus issued by the District Court of the United States, it appeared that he corresponded in all respects with the description, contained in the registration books of the customhouse, of the person to whom the certificate was issued. He was discharged from custody, and the order of discharge. was affirmed by the Circuit Court.

"On appeal to this court by the United States, held:

"(1) He was in custody under or by color of the authority of the United States, and the District Court had jurisdiction to issue the writ.

"(2) The jurisdiction of the court was not affected by the fact that the collector had passed on the question of allowing the person to land, or by the fact that the treaty provides for diplomatic action in a case of hardship.

"(3) The case of the petitioner was not to be adjudicated under the provisions of the act of July 5, 1884, c. 220, 23 Stat. 115, where they differed from those of the act of 1882.

"(4) In view of the provisions of section 4 of the act of 1882, in regard to a Chinese laborer arriving by sea, as distinguished from those of section 12 of the same act, in regard to one arriving by land, the District Court was authorized to receive the evidence it did in regard to the identity of the petitioner, and, on the facts it found, to discharge him from custody."

In Lem Moon Sing v. United States, 158 U. S. 546–548, 15 Sup. Ct. 970, 971, 39 L. Ed. 1082, the court said:

"The contention is that while, generally speaking, immigration officers have jurisdiction under the statute to exclude an alien who is not entitled under some statute or treaty to come into the United States, yet if the alien is entitled of right, by some law or treaty, to enter this country, but is nevertheless excluded by such officers, the latter exceed their jurisdiction; and their illegal action, if it results in restraining the alien of his liberty, presents a judicial question for the decision of which the courts may intervene upon a writ of habeas corpus.

"That view, if sustained, would bring into the courts every case of an alien who claimed the right to come into the United States under some law or treaty, but was prevented from doing so by the executive branch of the government. This would defeat the manifest purpose of Congress in committing to subordinate immigration officers and to the Secretary of the Treasury exclusive authority to determine whether a particular alien seeking admission into this country belongs to the class entitled by some law or treaty to come into the country, or to a class forbidden to enter the United States. Under that interpretation of the act of 1894, the provision that the decision of the appropriate immigration or customs officers should be final, unless reversed on appeal to the Secretary of the Treasury, would be of no practical value.

"The power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications. Is a statute passed in execution of that power any less applicable to an alien who has acquired a commercial domicile within the United States, but who, having voluntarily left the country, although for a temporary purpose, claims the right under some law or treaty to re-enter it? We think not. The words of the statute are broad, and include 'every case' of an alien, at least every Chinese alien, who, at the time of its passage, is out of this country, no matter for what reason, and seeks to come back. He is none the less an alien because of his having a commercial domicile in this country. While he lawfully remains here he is entitled to the benefit of the guaranties of life, liberty, and property, secured by the Constitution to all persons, of whatever race, within the jurisdiction of the United States. His personal rights when he is in this country, and such of his property as is here during his absence, are as fully protected by the supreme law of the land as if he were a native or naturalized citizen of the United States. But when he has voluntarily gone from the country, and is beyond its jurisdiction, being an alien, he cannot re-enter the United States in violation of the will of the government, as expressed in enactments of the lawmaking power. He cannot, by reason merely of his domicile in the United States for purposes of business, demand that his claim to re-enter this country, by virtue of some statute or treaty, shall be determined ultimately, if not in the first instance, by the courts of the United States, rather than exclusively and finally, in every instance, by executive officers charged by an act of Congress with the duty of executing the will of the political department of the government in respect of a matter wholly political in its character. He left the country subject to the exercise by Congress of every power it possessed under the Constitution."

In Fong Yue Ting v. United States, 149 U. S., at page 713, 13 Sup. Ct., page 1022, 37 L. Ed. 905, the court said:

"The power to exclude or to expel aliens, being a power affecting international relations, is vested in the political departments of the government, and is to be regulated by treaty or by act of Congress, and to be executed by the executive authority according to the regulations so established, except so far as the judicial department has been authorized by treaty or by statute, or is required by the paramount law of the Constitution, to intervene."

In substance, this is the effect of all the decisions bearing on the subject. This court finds no case decided by the Supreme Court of the United States holding that Congress may commit to the executive department, under the interstate commerce clause of the Constitution, the right to determine finally the question of the citizenship of a person applying for admission into the United States.

In United States v. Wong Kim Ark, 169 U. S. 649, 18 Sup. Ct. 456, 42 L. Ed. 890, the petitioner applied to the collector of customs at San Francisco for permission to land and enter the United States.

He was refused admission and restrained of his liberty by the collector, who decided that he was not entitled to enter. The petitioner claimed citizenship, and this was the question before the courts. It was decided that he was a citizen, and discharged on that ground. His citizenship was denied, and directly in question. It does not appear that the right of the courts to intervene was challenged, or that it was claimed that the decision of the collector was final or conclusive.

In Chin Bak Kan v. United States, 186 U. S. 193, 22 Sup. Ct. 891, 46 L. Ed. 1121, it was charged that the petitioner, a Chinese person, knowingly and unlawfully came into the United States, and was not entitled to remain. He was informed of the charge against him, and advised that he would be permitted to make a statement without or with oath, or refuse to make any statement or to answer any question put to him, and was entitled to reasonable time to send for counsel and to procure the attendance of witnesses. He denied the charges made, but admitted that he had just come into the United States. The hearing and trial was had before a United States commissioner, who decided that the petitioner was a Chinese person and a laborer, and that he unlawfully entered the United States as charged in the complaint, and was not entitled to remain therein. It was accordingly adjudged that he be removed from the United States to the empire of China. The petitioner gave no proof that he was a citizen of the United States, or of any country other than China. From the judgment of deportation an appeal was taken to the District Court of the United States, where the judgment of deportation was affirmed. On appeal to the Supreme Court of the United States it was held that it was competent for Congress to empower a United States commissioner to determine the various facts on which the citizenship of a Chinese person depends. The court held that:

"A United States commissioner is a quasi judicial officer, and in these hearings he acts judicially. Moreover, this case was taken by appeal from the commissioner to the judge of the District Court, and his decision was affirmed, so that there was an adjudication by a United States judge in the constitutional sense, as well as by the commissioner acting as a judge in the sense of the statute."

The court further said, in the opinion:

"By the law, the Chinese person must be adjudged unlawfully within the United States, unless he 'shall establish by affirmative proof', to the satisfaction of such justice, judge, or commissioner, his lawful right to remain in the United States.' As applied to aliens, there is no question of the validity of that provision, and the treaty, the legislation, and the circumstances considered, compliance with its requirements cannot be avoided by the mere assertion of citizenship. The facts on which such a claim is rested must be made to appear. And the inestimable heritage of citizenship is not to be conceded to those who seek to avail themselves of it under pressure of a particular exigency, without being able to show that it was ever possessed.

"Section 13 of the act of September 13, 1888, c. 1015, 25 Stat. 479 [U. S. Comp. St. 1901, p. 1317], provides that any Chinese person, or person of Chinese descent, found unlawfully in the United States, may be arrested on a warrant issued· upon a complaint under oath, 'by any justice, judge, or commissioner of any United States court,' and when convicted, on a hearing, and found and adjudged to be one not lawfully entitled to be or remain in

the United States, shall be removed to the country whence he came. 'But any such Chinese person convicted before a commissioner of the United States court may, within ten days from such conviction, appeal to the judge of the District Court for the district.'

"It seems to have been assumed, during the years following the date of the act, and is conceded by the United States, that although most of its provisions were dependent upon the ratification of the treaty of March 12, 1888, and failed with the failure of ratification, that this section is in and of itself independent legislation, and in force as such. Accordingly, in this case, an appeal was taken from the judgment of deportation rendered by the commissioner to the judge of the District Court of the United States for the Northern District of New York, and, upon hearing, the District Court affirmed that judgment. From the judgment of the District Court this appeal was taken under section 5 of the act of March 3, 1891, c. 551, 26 Stat. 1084 [U. S. Comp. St. 1901, p. 1294], on the ground that the construction of the treaty of 1894 [28 Stat. 1210] was drawn in question. Except in cases under that section where the question of jurisdiction alone is certified, we have power to dispose of the entire case; but, as the jurisdiction of the commissioner is sustained, we are of opinion that we cannot properly re-examine the facts already determined by two judgments below. That is the general rule, and there is nothing to take this case out of its operation, and, on the contrary, the conclusion is, a fortiori, justified. The same reasoning in respect to the authority to exclude applies to the authority to expel, and the policy of the legislation in respect to exclusion and expulsion is opposed to numerous appeals. And we are not disposed to hold that where a Chinese laborer has evaded the executive jurisdiction at the frontier and got into the county, he is therefore entitled to demand repeated rehearings on the facts."

Article 5, Amendments to the Constitution of the United States, provides, "No person shall be * * * deprived of life, liberty or property, without due process of law. * * *"

We are thus brought face to face with the proposition whether or not "due process of law," in determining the question of citizenship, when raised in proceedings to exclude or deport aliens, requires a trial and determination of the question in the courts of the United States by the judicial department of the government. That to exclude from entry into the United States, or to deport therefrom, a citizen of the United States, deprives him of liberty and property in the constitutional sense, cannot be successfully denied. Liberty includes not only the right to be out of prison, free to come and go, if the law is not violated in so doing, but to engage in all lawful pursuits, earn a livelihood, and own and enjoy property. The powers or jurisdiction of the judicial department is thus defined by the Constitution (article 3, §§ 1, 2):

"Section 1. The judicial power of the United States, shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish. * * *

"Sec. 2. The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States and treaties made, or which shall be made under their authority, * * * to controversies to which the United States shall be a party. * * *"

The fourteenth amendment to the Constitution declares who are citizens, and, as we have seen, no person is to be deprived of life, liberty, or property without due process of law. When a citizen of the United States seeks to enter the country and is denied the right to enter and refused entrance by the executive officers acting under a law of Congress authorizing them to exclude and refuse admission

to alien Chinese, or Chinese persons, and such refusal of admission is sought to be justified on the ground that the party seeking entrance is an alien and not a citizen, and such person is then held in custody to be returned to China, and he appeals to the courts, alleging that he is illegally restrained of his liberty and that he is a citizen of the United States, and is held under the determination of a tribunal having no jurisdiction to pronounce it, do we not have "a case" arising under the Constitution, or a controversy to which the United States is a party? Does not the judicial power extend to this class of cases and these controversies? And, if so, may Congress devolve the determination of the questions involved on the application for admission on the executive officers of the government and make their decision final? But when we consider that we have a government divided into departments, legislative, executive, and judicial, the making, the execution, and the interpretation of laws being committed to each respectively, it is not strange that there is found occasionally an apparent conflict of authority. The determination of all questions of fact relating to controversies between the United States and citizens thereof does not necessarily devolve upon or belong to the judicial department of the government. There are many cases where the other departments are the sole and final arbiters in such controversies. See Johnson v. Towsley, 13 Wall. 72–83, 20 L. Ed. 485; French v. Fyan, 93 U. S. 169–172, 23 L. Ed. 812; Quinby v. Conlan, 104 U. S. 420–426, 26 L. Ed. 800; Steel v. Smelting Co., 106 U. S. 450–453, 1 Sup. Ct. 389, 27 L. Ed. 226.

The Supreme Court has decided what facts must exist to constitute a person born in the United States of alien parents a citizen thereof. This is a determination by the judicial department of what the law is, and as to what facts must exist to create that status. When a person comes to our shores seeking admission as a citizen, must the existence or nonexistence of the facts alleged by him be determined by the judicial department, or may that department which has authority over the coming of persons into the United States determine whether or not such facts exist? May not it ascertain and determine who are and who are not aliens? Would the law be operative and effective if the power does not exist? If such department may do this, then the question here is, did the executive officers named have jurisdiction to ascertain the facts on which the citizenship of the petitioners depends? And of this there can be no serious question.

It is conceded that the petitioners are Chinese persons. They came from the empire of China, and, if born within the United States, must have departed therefrom. They sought to return to and enter the United States, and, having returned to our borders, they applied for admission into the United States. They presented no proof of citizenship, and made no pretense of compliance with the laws relating to and regulating the return to the United States of Chinese persons. It must be competent for Congress to enact laws regulating the departure from and return to the United States of its own citizens. By the Constitution, Congress has power to regulate interstate commerce, and this includes the coming of persons—any person

—into the United States. Congress, in the exercise of this power, has seen fit to enact:

"Sec. 4. That the master of any vessel arriving in the United States from any foreign port or place with any Chinese passengers on board shall, when he delivers his manifest of cargo, and if there be no cargo, when he makes legal entry of his vessel, and before landing or permitting to land any Chinese person (unless a diplomatic or consular officer, or attendant of such officer) deliver to the collector of customs of the district in which the vessel shall have arrived, the sealed certificate and letters as aforesaid, and a separate list of all Chinese persons taken on board of this vessel at any foreign port or place, and of all such persons on board at the time of arrival as aforesaid. Such list shall show the names of such persons and other particulars as shown by their open certificates, or other evidences required by this act, and such list shall be sworn to by the master in the manner required by law in relation to the manifest of the cargo."

See section 4, Act Sept. 13, 1888, c. 1015, 25 Stat. 476 [U. S. Comp. St. 1901, p. 1313].

"Sec. 12. That no Chinese person shall be permitted to enter the United States by land without producing to the proper officer of customs the certificate in this act required of Chinese persons seeking to land from a vessel."

See section 12, Act July 5, 1884, c. 220, 23 Stat. 117 [U. S. Comp. St. 1901, p. 1310].

"Sec. 12. That before any Chinese passengers are landed from any such vessel the collector, or his deputy shall proceed to examine such passengers, comparing the certificates with the list and with the passengers; and no passenger shall be allowed to land in the United States from such vessel in violation of law; and the collector shall in person decide all questions in dispute with regard to the right of any Chinese passenger to enter the United States, and his decision shall be subject to review by the Secretary of the Treasury and not otherwise."

See section 12, Act Sept. 13, 1888, c. 1015, 25 Stat. 478 [U. S. Comp. St. 1901, p. 1316].

Was it not competent for Congress to make this law and make it applicable to all Chinese persons, whether citizens or aliens? If so, then these petitioners were bound to show compliance with the law, and, not having done so, were properly denied admission. Applying for admission, 26 of them made no claim of citizenship; the other 6 merely stated they were born in the United States, but made no statement, and offered no evidence, showing they were born in the United States under circumstances and conditions making them citizens. We have, then, a case of Chinese persons applying for admission into the United States, and making application to those officers authorized by law to identify Chinese aliens and refuse them admission. They made no claim, and offered no proof, of citizenship. Judgment having gone against them as to their right to enter, and necessarily as to their citizenship, they apply by counsel, who states on information and belief that they are citizens, for a writ of habeas corpus, seeking to try the question of their right to enter in the courts on a new plea or allegation of fact not before asserted by them. If this can be done, every Chinese person applying for admission and refused can, by alleging citizenship, bring the matter into court and have this question determined by the judicial department of the government and in the courts. It will be said there is no

force in this proposition provided the petitioners have the constitutional right to appeal to the courts for a trial of this question of fact.

In Chin Bak Kan v. United States, 186 U. S. 193, 22 Sup. Ct. 891, 46 L. Ed. 1121, it was held that a United States commissioner is a quasi judicial officer, and that in the hearings under the Chinese exclusion laws he acts judicially. The court says, "But it is argued that the commissioner had no jurisdiction to act, because the claim of citizenship was made." The court then states the facts necessary to make a Chinese person born in the United States a citizen of the United States, as held in United States v. Wong Kim Ark, 169 U. S. 649, 18 Sup. Ct. 456, 42 L. Ed. 890, and then says:

"It is impossible for us to hold that it is not competent for Congress to empower a United States commissioner to determine the various facts on which citizenship depends under that decision."

A United States commissioner is neither a court nor the judge of any court, nor is he vested by law with any part of the judicial power of the United States, for the judicial power is vested in the Supreme Court and "such inferior courts as the Congress may from time to time ordain and establish," and cannot be vested in a commissioner, who is neither made a court, nor empowered to hold a court in the constitutional sense   True, he is an inferior officer of the court, appointed by it by authority of Congress, with defined and circumscribed powers, but no part of the judicial power of the United States is vested in him, nor can it be. United States v. Case, 8 Blatchf. 250, Fed. Cas. No. 14,742; United States v. Schumann, 2 Abb. (U. S.) 523, Fed. Cas. No. 16,235; In re Kaine, 14 How. 103, 14 L. Ed. 345; United States v. Clark, 1 Gall. 497, Fed. Cas. No. 497.

In United States v. Case, supra, Woodruff, J., said, "The commissioner holds no court, he acts simply as an arresting, examining, and committing magistrate."

In U. S. v. Schumann, supra, Field, J., said:

"The powers conferred are judicial in their nature, for judgment and discretion must be exercised; but they are not judicial in the sense in which judicial power is granted by the Constitution to the courts of the United States."

In U. S. v. Clark, supra, held that a judge of the United States Court sitting as an examining magistrate is not a court.

If, then, it is competent for the Congress to commit to United States commissioners the determination of the various facts on which the citizenship of a Chinese person depends, why is it not competent for Congress to commit to executive officers appointed by the heads of departments having jurisdiction of immigration and interstate commerce the determination of the facts on which the citizenship of Chinese persons applying for admission into the United States depends? All are inferior officers of the government, and possess those powers, and those only, which Congress confers. If, in determining such a question, a United States commissioner acts judicially and is a quasi judicial officer (because of his powers and duties, not because Congress devolved his appointment on the courts), why are not the executive officers duly empowered by Congress to hear and decide and pronounce judgment in these cases fully as much quasi

judicial officers, and why do not they too act judicially in hearing and deciding these cases? Neither the commissioner nor the inspector, etc., is exercising the judicial power of the government, for it is not vested in either of them, and, as said, cannot be. The Constitution, as we have seen, vests this power in the courts alone. It follows that a United States commissioner, in determining the various facts on which the citizenship of a Chinese person depends, while acting judicially, is neither possessed of nor exercising any part of the judicial power of the United States, and that, under the holding in Chin Bak Kan v. United States, it is competent for Congress to confer upon any inferior officer of the government, especially those appointed by the Department of Commerce and Labor, which has power to regulate the coming of all persons into the United States, plenary power to determine the various facts on which citizenship depends (so far as they relate to persons applying for admission into the United States), and that an appeal may be taken to the Secretary of Commerce and Labor, whose decision shall be final. If no appeal is taken, then the determination of the inferior officer is of course final, res adjudicata, of those facts. Chin Bak Kan v. United States, 186 U. S. 193, 22 Sup. Ct. 891, 46 L. Ed. 1121.

Judgment has been passed by those officers competent and duly authorized and having jurisdiction to pronounce it, and this court is without power in this proceeding to annul or reverse it. The petitioners are not deprived of their liberty without due process of law, for they have had a competent tribunal in which to be heard, a hearing with opportunity to present their evidence, a judgment or determination, and the right of appeal, all according to the law of the land. This is due process of law.

In the Japanese Immigrant Case, 189 U. S. 86, 23 Sup. Ct. 611, 47 L. Ed. 721, at page 100, 189 U. S., page 614, 23 Sup. Ct., 47 L. Ed. 721, Mr. Justice Harlan said (speaking of due process of law):

"No person shall be deprived of his liberty without opportunity at some time to be heard before such officers (those clothed with authority in the premises) in respect to the matters upon which that liberty depends; not necessarily an opportunity upon a regular set occasion and according to the forms of judicial procedure, but one that will secure the prompt, vigorous action contemplated by Congress, and at the same time be appropriate to the nature of the case upon which such officers are required to act."

Here was such an occasion and such a hearing. The petitioners cannot complain, 1or, when called upon to speak, and when it was their duty to speak, they remained mute, refusing to present .the facts calling for a favorable decision, if such facts existed. The proceeding was not a criminal action in fact or in its nature. The petitioners applied for admission into the United States, and were bound to come prepared to show their right to enter, that right being denied. There is no pretense they were denied a hearing or an opportunity to present evidence. The officers duly authorized to act, and acting according to law, heard and considered all the evidence offered or presented, and then gave judgment.

It may be remarked that the constitutional power of the Department of Commerce and Labor under the interstate and foreign commerce clause of the Constitution seems to be broad enough to give

Congress power to confer jurisdiction on its officers to determine all questions of the right of persons to enter the United States, including the facts on which depends that of citizenship. It is not intended to hold, and this court is not to be understood as holding, that cases may not arise (extraordinary in their nature and facts) where an appeal to the courts in appropriate proceedings may not be had; but under the facts of this case as presented to the court, and as presented to the executive officers, noncompliance with the law on the part of these petitioners "cannot be avoided by the mere assertion of citizenship" made at this time and in this manner. Chin Bak Kan v. United States, 186 U. S. 193, 22 Sup. Ct. 891, 46 L. Ed. 1121.

The petitioners assert that there is a decided distinction between the laws committing the decision of these questions to United States commissioners and those devolving the power on inspectors of immigration. It is pointed out that in the case of commissioners an appeal to and review by a judge of the District Court, and then by the higher courts, is provided for or permitted, and hence that there may be a hearing in the courts of the United States which constitutes due process of law, while no appeal to a judge or the courts from the decision of the inspector is permitted, only an appeal to the Secretary of Commerce and Labor. The trial and determination of the questions involved are committed to United States commissioners, and their decisions are final, if not appealed from. If this provision is invalid (does not accord due process of law), it is difficult to see how the hearing before an officer having no jurisdiction is validated by giving the right of appeal from his decision to the courts having jurisdiction in such cases. The record upon which the courts pass when the case comes up on appeal is made by the commissioner, and it is the correctness of his conclusions on the law and facts that is reviewed on appeal. The case is not tried and determined de novo. If the commissioner has no jurisdiction, then the Chinese person proceeded against has had no constitutional trial or hearing, and the illegal and unauthorized proceeding cannot be validated by the action of any appellate tribunal, its power being confined to a review of the proceedings had before the commissioner.

It follows from these considerations that the petitioners are not illegally held or detained. The writ must be dismissed, and the persons remanded. So ordered.