## UNITED STATES v. HUNG CHANG.

### (Circuit Court of Appeals, Sixth Circuit. December 1, 1904.)

### No. 1,339.

1. CHINESE EXCLUSION—JUDGMENT OF DISTRICT COURT—MODE OF REVIEW.

An appeal is the proper proceeding for the review by the Circuit Court of Appeals of a judgment of a District Court rendered on appeal from an order of a commissioner for the deportation of a Chinese person arrested under section 13 of Act Sept. 13, 1888, c. 1015, 25 Stat. 479 [U. S. Comp. St. 1901, p. 1317].

2. SAME—NATURE OF PROCEEDINGS FOR DEPORTATION—RULES OF EVIDENCE.

A proceeding for the deportation of a Chinese person under the exclusion acts is civil, and not criminal, in its nature, and the constitutional provisions which safeguard the rights of persons accused of crime do not apply therein. Admissions or statements of a defendant, voluntarily made to the officers by whom he is arrested in answer to questions put by them either before or after his arrest, are admissible in evidence against him, and the government has the right to call and examine him as a witness.

3. SAME—PROCEEDING FOR DEPORTATION—ISSUES AND PROOF.

In a proceeding for the deportation of a person under Chinese Exclusion Act Sept. 13, 1888, c. 1015, § 13, 25 Stat. 479 [U. S. Comp. St. 1901, p. 1317], as affected by Act May 5, 1892, c. 60, § 3, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1320], two questions are put in issue by defendant's plea of not guilty: First, whether or not he is a Chinese person or person of Chinese descent; and, second, if so, whether he is entitled to be and remain in the United States—the burden of proof on the latter issue being on the defendant. Upon either issue proof to the satisfaction of the commissioner or the court is all that is required, and upon the issue as to race the appearance of defendant, his color, manner of wearing his hair, his dress and language may properly be taken into consideration by the commissioner or court; and inspectors and interpreters employed by the government in the enforcement of the exclusion laws, who state their ability from practical experience to identify persons of the Chinese race from such characteristics, are competent to testify upon such issue, although they may have no theoretical knowledge of the science of ethnology.

**4. SAME—EVIDENCE CONSIDERED.**

Evidence before a commissioner in a proceeding for deportation considered, and *held* sufficient to sustain his finding that defendant was a Chinese person, and to warrant his order of deportation, in the absence of any evidence of defendant's right to remain in the United States.

Appeal from the District Court of the United States for the Northern District of Ohio.

For opinion below, see 126 Fed. 400.

John J. Sullivan, U. S. Atty., and T. H. Garry, Asst. U. S. Atty.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. Hung Chang, appellee, was arrested under a warrant issued in pursuance of section 13, c. 1015, Act Sept. 13, 1888, 25 Stat. 479 [U. S. Comp. St. 1901, p. 1317], charged with being a Chinese person, or person of Chinese descent, found unlawfully in the United States, and, after a hearing before a commissioner of the United States for the Northern District of Ohio, was adjudged to be one not lawfully entitled to remain in the United States, and ordered deported. From this finding and order, made October 26, 1903, Hung Chang appealed "to the District Court of the United States in and for the Northern District of Ohio, and to the judge of said court," and, after a hearing, the order of the commissioner was reversed and Hung Chang directed to be discharged from custody. Thereupon the United States applied for a writ of error from this judgment, which the District Judge declined to allow, except to his action as a judge and not as a court. In this condition the case came before us upon the question as to whether the appeal under the act was to the District Judge sitting as a judge or as a court, and we held, following In re United States, Petitioner, 194 U. S. 194, 24 Sup. Ct. 629, 48 L. Ed. 931, that the appeal was to the District Court, and not to the judge thereof as an individual. 130 Fed. 439. In accordance with the suggestion in our opinion, the case went back, the proper entries were made, and it is now here on appeal and writ of error to obtain a review of the action of the District Court. The case brought here both by appeal and by writ of error is but one case and will be so considered. Hurst v. Hollingsworth, 94 U. S. 111, 24 L. Ed. 31. In our opinion it is properly here by appeal. Ark Foo v. U. S., 128 Fed. 697, 63 C. C. A. 249; Tsoi Yii v. U. S. (C. C. A.) 129 Fed. 585.

The order of the commissioner was apparently based not only upon the oral testimony, but the appearance of Hung Chang himself; the order, among other things, reciting:

"Whereas, an examination was thereupon had by me of said Hung Chang upon the said charge, from which examination, and from the evidence adduced before me, it appears to me that the said Hung Chang is by race, language, color, and dress a Chinese person, and a laborer by occupation," etc.

¶ 4. Citizenship of the Chinese, see notes to Gee Fook Sing v. United States, 1 C. C. A. 212; Lee Sing Far v. Same, 35 C. C. A. 332.

In the hearing before the District Court, the government introduced three witnesses, the defendant none. Two were inspectors, the third an interpreter.

Thomas O'Neill, a Chinese inspector, testified he had been such about three months. He first met the defendant on a Nickel Plate train, at the station in Cleveland. Hung Chang was accompanied by six other Chinamen. The witness asked him in Chinese for his certificate, which he did not produce. In reply to questions he said he came from Vancouver, and then from Buffalo, and that he came over in a boat. At that time (as when in court) he had his hair done up in a queue, braided, and wound around the top of his head. His hair was black; the color of his skin yellow. Failing to produce a certificate, Hung Chang was placed under arrest, and subsequently made a detailed statement to the witness, through the government interpreter, which was testified to by the latter. The witness testified that for three months his official work had been with Chinese persons; that some years before, when employed in the Boston navy yard, he had for several years been in the habit of visiting friends, some 15 or 20, among the Chinese residents of that city. He stated that from association and observation he had made a practical study of the racial characteristics of the Chinese, and he was prepared to testify that Hung Chang was a Chinese person; but the court refused to permit it, because he admitted he had not made a study in the books of the science of ethnology.

Frank Pierce, the Chinese inspector in charge, was 43 years old, and had been a Chinese inspector since June, 1902. It had been his business closely to observe Chinamen, and he had made a study of their peculiarities. He testified that he had the means of knowing whether the defendant was a Chinaman, that he had examined him for the purpose of determining that question, and he was prepared to testify that he was a Chinaman; but the court would not permit it, because he admitted that his knowledge was practical, that he had not made a study of racial distinctions in books.

Shere F. Moy, the Chinese interpreter, was 40 years old. He was born in China, in the Sun Ling district; lived there until he was 13, and then came to this country; lived here until 1883; spent the next two years in China, and has been back here ever since. The witness talked with Hung Chang in Chinese. He testified that Hung Chang used the dialect of the Sun Ling district, where witness was born and raised. Witness testified that he was able to distinguish a person of Chinese descent from one of any other nationality, and he was ready to testify that Hung Chang was a person of Chinese descent, but the court would not permit him to, because he admitted on cross-examination that if a Chinaman had his queue cut off and did not speak the Chinese language he might be mistaken for a Corean or a Japanese. Shere Moy further testified, under objection, that Hung Chang stated to O'Neill, the inspector, through him, that his name was Hung Chang; that he was born in China; that he came from Hong Kong, and landed at Vancouver; that he lived there seven months, then came to Toronto, where he lived over a year, and from there came surreptitiously, by

boat, along with a lot of other Chinamen, to the United States, landing in a sandy place, from which they walked to a place where they took a train. He stated he was a laborer—a laundryman. Afterwards, at the United States Attorney's office, in answer to questions, Hung Chang stated that he was a full-blooded Chinese, and that his parents and grandparents were Chinese. It did not appear that these statements were induced by any promise or threat. At the same time the defendant was not warned that they would be used against him in the trial. The court excluded them on the ground the case was a criminal one, and they were not made voluntarily.

Hung Chang was present in person, presenting every outward appearance of being a Chinaman. He had his own Chinese interpreter. After the court had excluded the testimony of the three witnesses mentioned, the government requested that Hung Chang take the stand, and, through his interpreter, put to him two questions: First, whether he was a Chinese person; and, second, what was the nationality of his father and mother. These questions were objected to by counsel for the defendant, and the objections were sustained, the court taking the view that the case was a criminal one, and that he could not and would not compel the defendant to be a witness against himself.

To all of these rulings the government excepted, and the broad questions for consideration are: First, the nature of the proceeding; second, the kind of evidence required; and, third, whether there was enough to demand the deportation of the defendant.

1. By the treaty with China of December 8, 1894 (28 Stat. 1210), the coming, except under certain conditions specified in the treaty, of Chinese laborers to the United States, was absolutely prohibited. Article 1. Registered Chinese laborers were to be permitted to return to the United States under certain conditions and within certain periods, but only upon the production of proper certificates. Article 2. The provisions of the treaty were not to affect the right then enjoyed of Chinese officials, teachers, students, merchants, or travelers, but not laborers, to come to the United States, but only upon the production of certificates from their government, viséed by the diplomatic or consular representatives of the United States at their ports of departure. Article 3. For the purpose of carrying out the policy, thus broadly indicated, of excluding from the United States all Chinese persons with few exceptions, and of imposing upon all Chinese persons arrested and charged with being unlawfully within the United States the burden of establishing their right to be and remain here, the Chinese exclusion acts provide, among other things, as follows:

"That any Chinese person or persons of Chinese descent found unlawfully in the United States or its territories may be arrested upon a warrant issued upon a complaint, under oath, filed by any party on behalf of the United States, by any justice, judge or commissioner of any United States court, returnable before any justice, judge or commissioner of a United States court, or before any United States court, and when convicted upon a hearing and found and adjudged to be one not lawfully entitled to be or remain in the

United States, such person shall be removed from the United States to the country whence he came."

"But any such Chinese person convicted before a commissioner of a United States court may, within ten days from such conviction, appeal to the judge of the district court for the district." Section 13, c. 1015, Act Sept. 13, 1888, 25 Stat. 479 [U. S. Comp. St. 1901, p. 1317].

"That any Chinese person or person of Chinese descent arrested under the provisions of this act or the acts hereby extended shall be adjudged to be unlawfully within the United States unless such person shall establish, by affirmative proof, to the satisfaction of such justice, judge, or commissioner, his lawful right to remain in the United States." Secton 3, c. 60, Act May 5, 1892, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1320].

Hung Chang was arrested and tried under section 13, subject to the regulation established by section 3. His plea of "not guilty" put in issue two questions: First, was he a Chinese person or a person of Chinese descent? second, was he entitled to be and remain in the United States? If found to be a Chinese person or person of Chinese descent, it then became his duty to establish his lawful right to remain in the United States, and this he was to do "by affirmative proof to the satisfaction of such justice, judge or commissioner." In the case of laborers, this right can be shown only by producing the certificate required by section 6 of the act of May 5, 1892, as amended November 3, 1893. 28 Stat. 7, c. 14 [U. S. Comp. St. 1901, p. 1320]. In the case of merchants and others of the excepted classes only by producing the certificate required by section 6 of the act of May 6, 1882, as amended by the act of July 5, 1884. 23 Stat. 115, c. 220 [U. S. Comp. St. 1901, p. 1307]. As the record shows, Hung Chang had every appearance of being a Chinaman. His name, his language, his color, his mode of dressing the hair, his garb, all bespoke a person of Chinese descent. To any person of common knowledge and information, his appearance testified unmistakably to his race; and he himself had not denied, but admitted, his origin and nationality. Under these circumstances, what was the nature of the proof required to establish, to the satisfaction of the court, this obvious and only technically denied fact, namely, that he was a Chinese person or a person of Chinese descent? But before taking this up let us consider the nature of the proceeding, whether criminal or civil.

2. Whether based upon the power which every sovereign nation has of forbidding the entrance of foreigners within its territory, or upon the power under the Constitution to regulate commerce with foreign nations, it is settled by the decisions of the Supreme Court that Congress has the power to exclude or expel aliens from the United States, to provide for the deportation of those unlawfully here, and to intrust this to executive officers, acting either alone or in connection with the courts. The Chinese Exclusion Case, 130 U. S. 581, 9 Sup. Ct. 623, 32 L. Ed. 1068; Nishimura Ekiu v. U. S., 142 U. S. 661, 12 Sup. Ct. 336, 35 L. Ed. 1146; Fong Yue Ting v. U. S., 149 U. S. 699, 713, 731, 13 Sup. Ct. 1016, 37 L. Ed. 905; Lem Moon Sing v. U. S., 158 U. S. 539, 15 Sup. Ct. 967, 39 L. Ed. 1082; Wong Wing v. U. S., 163 U. S. 229, 237, 16 Sup. Ct. 977, 41 L. Ed. 140; U. S. v. Wong Kim Ark, 169 U. S. 649, 18 Sup. Ct. 456,

42 L. Ed. 890; Fok Yung Yo v. U. S., 185 U. S. 305, 22 Sup. Ct. 686, 46 L. Ed. 917; Chin Bak Kan v. U. S., 186 U. S. 193, 201, 22 Sup. Ct. 891, 46 L. Ed. 1121; Japanese Immigrant Case, 189 U. S. 87, 97, 23 Sup. Ct. 611, 47 L. Ed. 721; Ah How v. U. S., 193 U. S. 65, 24 Sup. Ct. 357, 48 L. Ed. 619; United States v. Sing Tuck, 194 U. S. 161, 24 Sup. Ct. 621, 48 L. Ed. 917; Turner v. Williams, 194 U. S. 279, 290, 24 Sup. Ct. 719, 48 L. Ed. 979.

Referring to the character of the Chinese deportation proceeding, the Supreme Court, speaking by Mr. Justice Gray, said in Fong Yue Ting v. U. S., 149 U. S. 698, 730, 13 Sup. Ct. 1016, 37 L. Ed. 905:

"The proceeding before a United States judge, as provided for in section 6 of the act of 1892, is in no proper sense a trial and sentence for a crime or offense. It is simply the ascertainment, by appropriate and lawful means, of the fact whether the conditions exist upon which Congress has enacted that an alien of this class may remain within the country. The order of deportation is not a punishment for crime. It is not a banishment, in the sense in which that word is often applied to the expulsion of a citizen from his country by way of punishment. It is but a method of enforcing the return to his own country of an alien who has not complied with the conditions upon the performance of which the government of the nation, acting within its constitutional authority, and through the proper departments, has determined that his continuing to reside here shall depend. He has not, therefore, been deprived of life, liberty, or property without due process of law; and the provisions of the Constitution, securing the right of trial by jury, and prohibiting unreasonable searches and seizures and cruel and unusual punishments, have no application."

This language was quoted with approval in Wong Wing v. U. S., 163 U. S. 236, 16 Sup. Ct. 980, 41 L. Ed. 140, in which the court held that section 4 of the act of May 5, 1892 (27 Stat. 25, c. 60 [U. S. Comp. St. 1901, p. 1320]), which provides that Chinese persons convicted of being unlawfully within the United States should be imprisoned at hard labor for a period not exceeding one year, was in violation of the fifth and sixth amendments to the Constitution, because under it infamous punishment might be imposed without a trial by jury. 163 U. S. 237, 16 Sup. Ct. 981, 41 L. Ed. 140. But in that case, referring to the nature of the detention pending a hearing to deport, the court says:

"We think it clear that detention, or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens, would be valid. Proceedings to exclude or expel would be vain if those accused could not be held in custody pending inquiry into their true character and while arrangements were being made for their deportation. Detention is a usual feature of every case of arrest on a criminal charge, even when an innocent person is wrongfully accused; but it is not imprisonment in a legal sense." 163 U. S. 235, 16 Sup. Ct. 980, 41 L. Ed. 140.

Accordingly, while holding that a Chinese person could not be punished by imprisonment without a trial by jury, the power of Congress to expel by executive process was sustained, the court saying (page 237, 16 U. S., page 980, 16 Sup. Ct., 41 L. Ed. 140):

"We regard it as settled by our previous decisions that the United States can, as a matter of public policy, by congressional enactment, forbid aliens or classes of aliens from coming within their borders, and expel aliens or classes of aliens from their territory, and can, in order to make effectual such decree of exclusion or expulsion, devolve the power and duty of identify-

ing and arresting the persons included in such decree, and causing their deportation, upon executive or subordinate officials."

See, also, U. S. v. Mrs. Gue Lim, 176 U. S. 459, 461, 20 Sup. Ct. 415, 417, 44 L. Ed. 544; Turner v. Williams, 194 U. S. 279, 291, 24 Sup. Ct. 719, 722, 48 L. Ed. 979.

3. We regard it settled by the cases we have cited, and others referred to therein, that the proceeding to deport is civil, and not criminal, in its nature. Its object is to expel the alien from a place where he has no right to be, and to send him back where he belongs. It does not punish him, for expulsion from a place where one has no right to be is not punishment, and it does not forfeit any right within the rule in Boyd v. U. S., 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, for he has no right to be here, and therefore possesses none to forfeit. It is no more criminal in character than is a proceeding to eject a person wrongfully in possession of real estate, or to enjoin one from wrongfully enjoying an easement in real estate. Neither the rules of evidence nor the nature of the proof required in criminal cases govern. The Supreme Court has expressly held that the amendments to the Constitution which safeguard the rights of persons accused of crime do not apply. The rule in the Bram Case, 168 U. S. 532, 18 Sup. Ct. 183, 42 L. Ed. 568, respecting the admission of statements made by a person charged with crime, does not control. The statements made by Hung Chang to the inspector and interpreter should have been admitted. These statements, partly made before and partly after his arrest, were not made involuntarily. They were made in answer to questions officially put. If the defendant had sought to enter the country in a lawful way, through a port of entry, it would have been the duty of an officer of the United States to examine him as to his right to enter, and his statements could have been used against him. His coming surreptitiously into the country did not materially alter the situation. It was now the duty of an officer to examine him as to his right to remain. The statements he made were not introduced as confessions of crime, but as admissions in a civil matter.

It further follows from the fact that this was a civil proceeding that Hung Chang could not assume the attitude of a defendant in a criminal case, refuse to testify, and insist his refusal should in no way be used against him. It is unnecessary to decide whether he could have been compelled to answer. No attempt was made to compel him. His counsel advised him not to answer, and the court approved of this, and excluded the questions. This refusal to testify upon matters peculiarly within his knowledge was proper for consideration by the court. United States v. Lee Huen et al. (D. C.) 118 Fed. 442, 456.

4. All the testimony of the government identifying Hung Chang as a Chinese person was excluded. In the cases cited the Supreme Court has sustained the authority of Congress to provide, through executive agencies, for the identification and deportation of Chinese persons unlawfully in this country. To identify such Chinese persons in the first instance, inspectors and interpreters are employed. The witnesses offered were two inspectors and one interpreter. These witnesses had devoted and were devoting their time to the identification and examination of Chinese persons. They had made a practical study of the

characteristics of Chinamen. They were prepared to testify that Hung Chang was a Chinese person; but the court would not permit it, because they did not qualify as experts in the sciences of anthropology and ethnology. A study of Chinamen as they are was not sufficient. One must know what they are said to be in books. The court assumed there are certain racial characteristics concealed somewhere about Chinamen, which can only be known by great study in books, and that the identification of a person as a Chinaman upon any other grounds of distinction is worthless as evidence. Nothing but the testimony of experts in the science of race distinctions would, in his opinion, satisfy the demand for proof upon the point whether Hung Chang was a Chinaman or not. The court even went to the extent of holding that if the statements of Hung Chang were admitted, to the effect that he was born in China, and that his parents and grandparents were Chinese persons, his testimony would not be important, saying:

"The fact that an individual was born in China is in no wise conclusive that he is a Chinese person, nor does it tend to prove that he is such. The statement that his father and mother and his grandparents were Chinese persons is only the expression of an opinion, and can have no more weight in coming from the defendant than if coming from any one else."

No support for the view thus taken by the court of the kind of proof required in a deportation proceeding can be found in the policy or provisions of the Chinese exclusion acts. A history of their adoption may be found in the opinion of Mr. Justice Field in the Chinese Exclusion Case, 130 U. S. 581, 9 Sup. Ct. 623, 32 L. Ed. 1068. Referring to the immigration of the Chinese into California, he says that, notwithstanding the favorable provisions of the early treaty with China, "they remained strangers in the land, residing apart by themselves, and adhering to the customs and usages of their own country. It seemed impossible for them to assimilate with our people, or to make any change in their habits or modes of living." Page 595, 130 U. S., page 626, 9 Sup. Ct., 32 L. Ed. 1068. And this was one reason for their exclusion. The Chinese are a peculiar people, not hard, but easy, to recognize. Their racial characteristics are plain and apparent. The acts themselves recognize this in providing that, when a Chinese person found unlawfully in the United States is deported, "the person who brought or aided in bringing such person in the United States shall be liable to the government for all necessary expenses incurred in such investigation and removal"; and heavy penalties are imposed on the master of any vessel who permits any Chinese person to land in the United States in violation of law. Because the distinguishing characteristics of the Chinese—such as the color, the mode of dressing the hair, the language, and the garb—are marked and obvious, open to all, these are not, therefore, to be rejected as worthless, and the government restricted to other characteristics, which are not described, and apparently are unknown except to supposed experts in an occult science. The nature of the proof required is not that demanded in a criminal case. These acts are to receive a sensible construction, such as will effectuate the legislative intention. Lau Ow Bew v. U. S., 144 U. S. 47, 59, 12 Sup. Ct. 517, 36 L. Ed. 340; U. S. v. Mrs. Gue Lim, 176 U. S. 459, 467, 20 Sup. Ct. 415, 44 L. Ed. 544. The statute

provides that any Chinese person arrested on the charge of being unlawfully within the United States must establish his right to remain here by affirmative proof, to the satisfaction of the commissioner or court. No greater degree of proof is required on the part of the United States. It is not required to do more than satisfy the commissioner or judge, by affirmative proof, that the one under arrest is a person of Chinese descent. This does not mean to satisfy beyond any possibility of doubt, but only to a reasonable degree of certainty, such as a rational mind would demand in any serious matter of personal concern. U. S. v. Lee Huen (D. C.) 118 Fed. 442, 457. It may be questioned whether Congress ever contemplated in this proceeding the raising of the question whether the person arrested was or was not a Chinese person. Congress apparently assumed that the characteristics of Chinese persons are matters of common knowledge. A Chinese person found unlawfully in the United States was to be arrested, and, after a hearing, deported, unless he satisfied the authorities that he had a right to remain. This apparently left to the inspector who made the arrest the identification of the Chinaman as such. Indeed, although the exclusion acts have been in force for some 20 years, this is the first case in which the question was raised and proof demanded. It is not necessary to consider whether the question of race goes to the jurisdiction of the commissioner, and might or should be raised by a proceeding in habeas corpus, as in Gonzales v. Williams, 192 U. S. 1, 24 Sup. Ct. 177, 48 L. Ed. 317. Undoubtedly it is necessary for the commissioner and the court to find that the defendant is a person of Chinese descent, in order to sustain their jurisdiction and justify the deportation. But under the circumstances it is necessary for neither to close their eyes to the obvious facts. The commissioner, as pointed out, apparently took into consideration the real evidence furnished by the defendant himself as to his race. It was entirely competent for the court below to do the same thing. Upon the question of race ancestry, the person involved is often the best evidence to produce. It is a case of "res ipsa loquitur." The tribunal judges by looking at the person. 1 Greenleaf on Evidence (16th Ed.) § 13c; Chamberlayne's Best on Evidence, p. 196, notes.

In Garvin v. The State, 52 Miss. 207, it was held that, where an indictment described the accused as a "colored person," that fact might be proven by his production before the jury; the court saying (page 209):

"It is urged that this was erroneous, because it is said that the jury can know nothing except by the testimony of witnesses. This is not true as to physical facts, which may be brought to their attention by ocular demonstration. It would not be necessary to prove by other testimony than profert of the party that he was 'a person,' 'a man,' if so described in the indictment." See, also, Warlick v. White, 76 N. C. 175, 179.

In the case of Ark Foo v. U. S., 128 Fed. 697, 63 C. C. A. 249, Ark Foo claimed he was born in the United States. A witness testified that he was 29 years old, and was born in the United States. The commissioner rejected this testimony, saying that he was satisfied

from the defendant's appearance that he was certainly over 40 years of age, and therefore placed no reliance in the witness' story. The Circuit Court of Appeals of the Second Circuit sustained the action of the District Judge in holding that the commissioner's determination ought not to be disturbed on appeal; saying:

"To the commissioner is delegated the duty to determine in the first instance these questions of fact; and if it were perfectly apparent to him, as he says it was, that the appellants' witness had falsely stated the age of one of them, the commissioner was justified in rejecting the entire testimony."

The appearance of Hung Chang, his color, his mode of dressing the hair, his language, all are described in the record in testimony not objected to. All were present and apparent to the court. They were proof sufficient, in the absence of explanation or contradiction, to warrant the finding that he was a Chinaman or person of Chinese descent. In addition, there was the testimony of the government witnesses, which was received, tending to show he was a Chinaman, and also the fact that he refused, in answer to questions, to state whether he was or was not a Chinese person, and what was the nationality of his father and mother. In our opinion, the proof thus produced was ample to establish the fact that the defendant was a person of Chinese descent, and, no proof being produced by him tending to show his right to remain in the United States, the judgment of the lower court is reversed, and the case remanded, with directions to enter a judgment affirming the finding and order of the commissioner, and directing the deportation of the defendant, Hung Chang.