# COURT OF APPEALS.

## July 11, 1916.

## THE PEOPLE v. JAN TRYBUS.

### (219 N. Y. 18.)

MURDER—EVIDENCE—WEIGHT OF EVIDENCE IDENTIFYING DEFENDANT AS THE PERSON WHO COMMITTED THE CRIME IS FOR THE JURY AND WHEN NOT INCREDIBLE AS MATTER OF LAW THE VERDICT CONVICTING DEFENDANT SHOULD BE AFFIRMED—PRACTICE OF DETECTIVES IN TAKING INTO CUSTODY AND HOLDING IN DURANCE PERSONS SUSPECTED OF CRIME BEFORE ARRAIGNMENT CONDEMNED—EVIDENCE RELATING TO SEVERAL DIFFERENT CONFESSIONS MADE BY DEFENDANT EXAMINED, AND HELD, THAT SUCH EVIDENCE WAS SUFFICIENT TO SUSTAIN FINDING THAT ONE OR MORE OF SUCH STATEMENTS MADE TO THE DISTRICT ATTORNEY WAS VOLUNTARY AND PROPERLY OBTAINED—WAIVER BY DEFENDANT OF PROTECTION OF STATUTE (CODE CRIM. PRO., § 393) BY TAKING WITNESS STAND FOR PURPOSE OF EXPLAINING CONFESSIONS.

1. On the trial of defendant, who has been convicted of the crime of murder in the first degree, a witness positively identified him as the man who committed the crime. The weight of this evidence was for the jury, and it was not incredible as matter of law. The guilt of the defendant was, therefore, fully established.

2. Immaterial error must be disregarded where guilt is clearly established, but if defendant's right to a fair trial is substantially affected by erroneous rulings, it is the duty of this court to reverse the conviction.

3. The conduct of detectives in holding suspected persons in custody before formal complaint against them, in order to obtain incriminating statements from them before they can see counsel and friends, condemned.

4. The reception in evidence of statements thus obtained is not illegal as matter of law, although the circumstances are to be considered by the jury on the question of voluntariness.

5. Defendant took the stand for the sole purpose of testifying to the circumstances under which he made his statements, before they were admitted in evidence. Although the district attorney might properly have asked defendant whether he committed the murder or

if his statements were true or false, he confined himself to strict cross-examination and told the jury he did not ask these questions "because the law prohibits me and I cannot." *Held,* that when defendant took the stand for any purpose he waived the protection of section 393 of the Code of Criminal Procedure and no error was committed by the district attorney's reference to defendant's failure to testify generally in his own behalf.

(Argued June 12, 1916; decided July 11, 1916.)

APPEAL from a judgment of the Supreme Court, rendered December 9, 1915, at a Trial Term for the county of Genesee, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*Bayard J. Stedman, George W. Watson, Fred H. Dunham* and *Albert J. Waterman* for appellant. The methods employed by the district attorney by which the so-called " confessions " were obtained, were so reprehensible that their admission constitutes reversible error, entirely irrespective of their truth or falsity. (People v. Buffom, 214 N. Y. 53; People v. Randazzio, 194 N. Y. 155; People v. Corey, 156 N. Y. 244; People v. Kennedy, 159 N. Y. 346; People v. Meyer, 162 N. Y. 361; People v. Mull, 167 N. Y. 247; People v. White, 176 N. Y. 331; People v. Wolf, 183 N. Y. 464; People v. Coscone, 185 N. Y. 317; People v. Rogers, 192 N. Y. 331; People v. Freeman, 203 N. Y. 267; People v. Becker, 210 N. Y. 125; People v. Kane, 213 N. Y. 278; People v. Sarzano, 212 N. Y. 231; People v. Merendi, 213 N. Y. 615; People v. Ferola, 215 N. Y. 285; People v. Watson, 216 N. Y. 565.) Error was committed on the part of the district attorney, in summing up, when he repeatedly referred to the fact that defendant did not take the witness stand. (People v. Corey, 157 N. Y. 346; Brooks v. Rochester R. R. Co., 156 N. Y. 244; People v. Hill, 37 App. Div. 327; Swan v. Keough, 34 App. Div. 80; People v. Conroy,

200 N. Y. 369; People v. Watson, 216 N. Y. 565; Ruloff v. People, 45 N. Y. 213; People v. Rose, 52 Hun, 33; People v. Ryan, 120 App. Div. 275; People v. Wolf, 183 N. Y. 464; People v. Mull, 167 N. Y. 247; People v. Fielding, 158 N. Y. 542; People v. Becker, 215 N. Y. 126; People v. Kinney, 202 N. Y. 389.)

*William H. Coon, District Attorney,* for respondent. The confessions were properly received in evidence. (People v. Ferola, 215 N. Y. 285; People v. Randazzio, 194 N. Y. 147; People v. Kennedy, 159 N. Y. 346; People v. Meyer, 162 N. Y. 357; People v. Buffom, 214 N. Y. 53; People v. Rogers, 192 N. Y. 348; People v. White, 176 N. Y. 350; People v. Schermerhorn, 203 N. Y. 57; Balbo v. People, 80 N. Y. 484; People v. McGloin, 91 N. Y. 241.) It was proper for the district attorney, on summing up, to refer to the fact that defendant did not take the witness stand. (People v. Meyers, 140 N. Y. 246; People v. Valentine, 147 App. Div. 31; Connors v. People, 50 N. Y. 240; People v. Hinksman, 192 N. Y. 421; People v. Tice, 131 N. Y. 651; People v. Courtney, 94 N. Y. 490; People v. Casey, 72 N. Y. 394; People v. Brandon, 42 N. Y. 265; Stover v. People, 56 N. Y. 320; People v. Guidici, 100 N. Y. 507; People v. Scully, 3 N. Y. Cr. Rep. 245; People v. Cosmides, 133 App. Div. 104.)

POUND, J.:

Defendant has been convicted of the crime of murder in the first degree. At four o'clock on the morning of October 17, 1915, Jacob Schoenberg, was sleeping in his bed in his home in Batavia, with his son Max, a high school boy sixteen years of age, when the room was entered from outside the house through the window by a man who beat out Schoenberg's brains with an iron bar. Max was aroused by the blow, saw a man in the room and called for help. The man told him

to shut up, demanded money and threatened to shoot him. On the trial Max positively identified the defendant as the man he saw in the room. The identification was based largely on defendant's manner of speech. The weight of this evidence was for the jury, and it is not incredible as matter of law. The guilt of the defendant was, therefore, fully established. It is claimed, however, that by reason of errors committed on the trial the judgment of conviction should be reversed; that confessions were obtained from defendant under the influence of fear induced by threats or stipulations not to prosecute for murder in the first degree, and introduced in evidence contrary to the provisions of section 395 of the Code of Criminal Procedure, and that the district attorney improperly commented on the failure of defendant to testify in his own behalf on the merits of the case, contrary to the provisions of section 393 of the Code of Criminal Procedure. If such errors were committed and if defendant's right to a fair trial was thereby substantially affected it is the duty of this court to reverse the judgment of· conviction.

The district attorney employed Thomas O'Grady, a private detective, to investigate the circumstances attending the death of Schoenberg, and as a result of his investigation defendant was, to use the euphonious parlance of the detectives, "taken into custody" by one of O'Grady's men on October 29. O'Grady, when defendant was thereupon brought to his office in Buffalo, according to O'Grady's own version of the transaction, "grabbed him quick around the neck and shoved him against the radiator and searched him." Then O'Grady held him as his private captive, but locked up in a police station in Buffalo when he was not in O'Grady's personal charge until he was brought to Batavia. The following evening defendant in O'Grady's office made a statement, which he wrote out himself, in which he said that he was drunk on the night of the murder; that he walked to the house of deceased, took the

window out, found an iron bar, went into the house, hit the man on the head once or twice, heard the boy call for help, demanded money and jumped out through the window. O'Grady and the detectives swear that the statement was obtained without threats or promises. Defendant's claim is that they told him that if he didn't make a statement they would have him sent up for life on another charge as an habitual criminal, but if he made the statement they would get him off with a sentence of twenty years. Defendant made another statement in O'Grady's office November 1, and a third statement on the same day to the district attorney of Genesee county. These statements were taken stenographically and transcribed on the typewriter. He was then brought to Batavia and arraigned on November 2, and for the first time advised as to his right to counsel. He waived examination and was held to await the action of the grand jury. On November 4 he made a still further statement in his own handwriting and on November 5 he made to the district attorney a fifth statement. When he made them he was confined in the police station in the city of Batavia. All these statements describe with circumstance the killing of Schoenberg by defendant. In addition, defendant made oral statements, particularly on November 3, when at the Batavia police station he told the daughters of deceased that he was sorry that he had murdered their father.

The conduct of a destective in needlessly laying hands on a helpless man detained by him without legal warrant deserves the severest censure. The practice of detectives to take into custody and hold in durance persons merely suspected of crime in order to obtain statements from them before formal complaint and arraignment, and before they can see friends and counsel, is without legal sanction. The question is not, however, whether the detective struck defendant or held him illegally in custody. Neither of these facts, *per se,* makes the reception of the statements in evidence illegal as matter of law (Balbo v. People, 80

N. Y. 484), although they are properly to be considered by the jury in determining the voluntariness of the statements. The question is whether defendant, voluntarily, not under the influence of fear induced by threats or under a stipulation of the district attorney not to prosecute (Code Crim. Pro. § 395), made the statements. Aside from the rough handling and the illegal custody, which are not denied, there is no uncontradicted evidence of threats or promises made to defendant, or of hope or fear induced thereby, and there is nothing to connect the district attorney with any proposition to mitigate the punishment if a confession were made. In the third statement, made to the district attorney, defendant was fully advised that he was accused of the killing of Schoenberg, that he need not talk, and that what he said might be used against him. He stated that he was not influenced by threats or promises, and that he wanted to make a statement. This statement and the uncontradicted evidence of the circumstances under which it was obtained were sufficient to sustain the finding of the jury that it was voluntary and properly obtained. (People v. Rogers, 192 N. Y. 331, 350.) Where guilt is clearly established we must disregard unsubstantial error (Code Crim. Pro. § 542; People v. Sarzano, 212 N. Y. 231; People v. Ferola, 215 N. Y. 285, 291), and even if it could be said that proof was lacking that the first two statements were voluntary, defendant himself does not claim that *all* his statements were involuntary or inspired by hope or fear. In fact, he wholly fails to testify that he made any of the statements *because* he was in fear or *because* he was promised partial immunity. He leaves it to the jury to infer this from the circumstances, if they will. He concludes his fourth statement, which was in his own handwriting, with these words, which were of his own choosing: "I want to die clean," and that stands as his final purpose in confessing his guilt. The jury was properly instructed as to the law to be applied by them before they should consider the confessions as

evidence of guilt. The question as to the existence of the circumstances which make them admissible was one of fact and the verdict is conclusive.

Defendant's counsel urges that the district attorney made improper reference to the failure of defendant to deny his guilt on the witness stand at the trial. Defendant took the stand for the sole purpose of testifying to the circumstances under which he made his statements, before the statements were admitted in evidence. When he took the stand for any purpose he waived the protection of section 393 of the Code of Criminal Procedure, which provides that " the defendant in all cases may testify as a witness in his own behalf, but his neglect or refusal to testify does not create any presumption against him." No longer did he " neglect or refuse to testify." If he had not taken the stand it would have been the duty of the district attorney to refrain from any suggestion that an inference of guilt might be drawn therefrom. But common sense dictates that no such tender regard for the rights of a person accused of crime extends to the case where the defendant testifies on one point and then seeks to invoke the protection of section 393 as to his neglect or refusal to testify generally. He must choose between his right to testify and his privilege not to testify. He cannot claim the right to testify as a witness in his own behalf and at the same time assert the privilege that no presumption shall be created against him by his neglect or refusal to testify. (People v. Tice, 131 N. Y. 651.)

The district attorney might have asked defendant after he had been placed on the stand to testify in his own behalf if he had killed Schoenberg, or if the statement he made to that effect were true or false. He confined himself to strict cross-examination and told the jury he did not ask these questions " because the law prohibits me and I cannot." He might also have asked the jury to infer guilt from defendant's failure to deny it. He contented himself by asking the court to charge the jury that

the district attorney was in cross-examining defendant confined
solely to the question whether the confessions were voluntary.
The court charged as requested.  From this we may infer that
the court would in its discretion, as it might properly have
done, have limited the district attorney, had he sought to cross-
examine the defendant generally, to the circumstances under
which the statements were made and would not have required
defendant to testify as to the truthfulness of the statements.
This would have been the strictest kind of strict cross-examina-
tion.  The district attorney curtailed his own examination of
defendant.  It was proper for him to explain to the jury on
what theory he did so.  This worked no prejudice to defendant.
No impropriety is claimed to have been committed except that
the district attorney thereby suggested to the jury that a pre-
sumption against defendant was created by his failure to testify
generally for the reason that although the district attorney
could not ask the defendant if he killed Schoenberg, defend-
ant's counsel might have done so.  That suggestion would have
been, as we have seen, entirely proper, even if it had been made
in clear and unmistakable terms.

The judgment of conviction should be affirmed.

WILLARD BARTLETT, Ch. J., COLLIN, CUDDEBACK, HOGAN
and SEABURY, JJ., concur; HISCOCK, J., concurs in result.

Judgment of conviction affirmed.