## AH LIN v. UNITED STATES.

Circuit Court of Appeals, First Circuit. June 4, 1927.

No. 2096.

**1. Aliens ☞32(5)—Burden of proof is on Chinese person claiming right to remain in United States because born therein (Chinese Exclusion Act (Comp. St. § 4315 et seq.).**

Under Chinese Exclusion Act, § 3 (Comp. St. § 4317), where Chinese person claims right to remain in United States because of having been born therein, burden is on him to prove such fact by affirmative proof.

**2. Aliens ☞32(1)—Lapse of time does not bar deportation proceedings under Chinese Exclusion Act (Comp. St. § 4315 et seq.)**

No lapse of time bars action for deportation under Chinese Exclusion Act (Comp. St. § 4315 et seq.), and court, therefore, properly refused to allow plea of statute of limitations.

**3. Aliens ⚖═32(1)—Deportation proceedings are in nature civil, and constitutional rights of accused in criminal proceedings do not apply.**

Deportation proceedings are in their nature civil, .and the constitutional safeguards thrown about accused in criminal case do not apply.

**4. Aliens ⚖═32(6)—Chinese person's statements, made when illegally arrested, were admissible, if commissioner found he understood questions.**

Statements made by Chinese person, when he was illegally arrested without warrant for his deportation, were admissible, if commissioner found that he understood interpreter and made statements freely.

**5. Aliens ⚖═32(13)—Admissibility of evidence not raised by assignment of error is not reviewable on appeal.**

Question of admissibility of evidence in deportation proceedings, not raised by assignment of error, is not reviewable on appeal.

**6. Aliens ⚖═32(5)—Burden on Chinese person of proving that he was native-born citizen held not sustained by evidence in deportation proceedings (Chinese Exclusion Act, § 3 [Comp. St. § 4317]).**

In proceedings to deport Chinese person, evidence *held* not to sustain burden on such person under Chinese Exclusion Act, § 3 (Comp. St. § 4317), of proving that he was native-born citizen of the United States.

Anderson, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Massachusetts; Elisha H. Brewster, Judge.

Deportation proceeding by the United States against Ah Lin, alias. From an order affirming an order of deportation, respondent appeals. Affirmed.

H. W. Sullivan, of Boston, Mass., for appellant.

John W. Schenck, Asst. U. S. Atty., of Boston, Mass.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. The appellant is a Chinese person, who has been ordered to be deported by a United States commissioner under the Chinese Exclusion Act (Comp. St. § 4315, et seq.), on the ground that he is unlawfully in the United States, and upon appeal to the District Court the order of deportation has been affirmed.

On the evening of Saturday, September 19, 1925, two Chinese inspectors, charged with the duty of enforcing the Chinese Exclusion Act, went with two police officers in plain clothes to the appellant's laundry at 46 Astor street, Boston. The inspectors asked the appellant in substance if he had any certificate of identity, or any papers to show that he had a lawful right to remain in this country. It does not appear from the record that the examination at his laundry extended further than this. Under the direction, evidently of the inspectors, the appellant was arrested by the police officers and taken to the police station, where he was examined by one of the inspectors with the aid of a Chinese interpreter who spoke the same dialect as the appellant, and a stenographer took down the questions and answers. As a result of this examination he was detained at the police station until the following Monday, when a warrant was issued by the United States commissioner for his arrest on the charge that he was unlawfully within the United States.

At the examination before the commissioner, the appellant claimed that he was born in Oroville, in the state of California, and lived there until he was 10 years old; that his father died when he was about 3 years old, and his mother 6 months later; that after the death of his father and mother a Chinese person by the name of Lim Ni and his wife took care of him, and when he was about 10 years old put him on a train at Oroville with a tag on him stating that his destination was Boston, and told him to go to Sam Wah Kee's store there on his arrival; that he was met at the station in Boston by another Chinese person, who has since died; that Lim Ni told him that he was born in Oroville; that no other person ever told him about the place of his birth, but that one Moy Pok, another Chinese person, knew about his birth and attended his shaving feast in Oroville; that he met Moy Pok about a week after he came to Boston at Sam Wah Kee's store, and that Moy Pok then told him he was present at his shaving feast; that when he first came to Boston he lived with Moy Jung at 36 Harrison avenue; that when he was 15 years old he first went to work at Haverhill, where he stayed 3 years, and after that went to New York, where he remained 3 years; then he came back to Boston and went to work in a restaurant on Essex street, where he was employed for 12 years; after that he went to Providence, R. I.; that he was in Boston when the draft was made in the late war, and produced his draft card, but said he did not fill out any questionnaire, and a search of the records at Washington disclosed none.

Act of May 5, 1892, c. 60, § 3, Compiled Stat. 1916, § 4317, is as follows:

"Any Chinese person or person of Chinese descent arrested under the provisions of this act or the acts hereby extended shall be adjudged to be unlawfully within the United States unless such person shall establish, by affirmative proof, to the satisfaction of such justice, judge, or commissioner, his lawful right to remain in the United States."

[1] When a Chinese person claims to have been born in the United States, the Supreme Court, in Chin Bak Kan v. United States, 186 U. S. 193, 22 S. Ct. 891, 46 L. Ed. 1121, and in Ah How v. United States, 193 U. S. 65, 24 S. Ct. 357, 48 L. Ed. 619, has held that the burden rests upon the Chinese to satisfy the court by affirmative proof of this fact. In Chin Bak Kan v. United States, supra, the court, by Chief Justice Fuller, said in speaking of the claim of citizenship by birth:

"The facts on which such a claim is rested must be made to appear. And the inestimable heritage of citizenship is not to be conceded to those who seek to avail themselves of it under pressure of a particular exigency, without being able to show that it was ever possessed."

See, also, Jung See v. Nash (C. C. A.) 4 F.(2d) 639; Christy v. Leong Don (C. C. A.) 5 F.(2d) 135; Fong Ping Ngar v. United States (C. C. A.) 223 F. 523; United States v. Hom Lim, 223 F. 520. In the last case the Circuit Court of Appeals in the Second Circuit, in an opinion by Lacombe, Circuit Judge, stated:

"Congress has provided a procedure whereby a person of Chinese descent, apparently a laborer, who, upon being interrogated by the inspector, produces no certificate such as the statutes call for, shall be brought before a United States commissioner for examination as to his status. Upon such examination the burden of proof is on the Chinese person to satisfy the commissioner, or the reviewing court, that he is entitled to remain in this country. He cannot avoid that investigation merely by stating to the inspector, even under oath, that he was born in the United States. In view of the decision of the Supreme Court in United States v. Ju Toy, 198 U. S. 253, 25 S. Ct. 644, 49 L. Ed. 1040, we are satisfied that it was within the constitutional power of Congress to provide for this procedure, even in the case of Chinese persons who eventually, upon examination before the proper tribunals, succeed in establishing by satisfactory proof the proposition that they are native-born citizens."

In Fong Yue Ting v. United States, 149 U. S. 698, 13 S. Ct. 1016, 37 L. Ed. 905, it was held that Congress did not exceed its powers by prescribing in the Exclusion Act of 1892 that any Chinese person arrested under the act shall be required to establish his right to remain by affirmative proof.

What has been said disposes of the appellant's third and fourth assignments of error. In the fifth assignment of error it is alleged that the District Court "erred in ruling impliedly that no presumption of right to be in this country arises from the fact of long-continued and unmolested residence of the appellant in the United States." The record does not disclose that the District Court made this ruling, but the court did find that there was evidence that the appellant had been in Boston between 10 and 15 years, but almost no evidence to corroborate his statement that he had been in Boston 30 years.

[2] By the sixth assignment of error appellant alleges that the court "erred in refusing to allow a plea of the statute of limitations"; but no lapse of time will bar an action for deportation under the Chinese Exclusion Act. Moy Wing Sun v. Prentis (C. C. A.) 234 F. 24; Wong Chung v. United States (C. C. A.) 244 F. 410.

The District Court has found that the evidence offered, if believed, "would have been sufficient to sustain the defendant's burden of showing that he was lawfully in the United States," but that "doubts as to the credibility of the testimony might well have been entertained by the commissioner," and that "the testimony of the appellant is not altogether consistent with that which he gave before the commissioner when first arrested." Counsel for the appellant, in his oral argument and in his brief, has argued that the statements made by the appellant at the police station should not have been received in evidence, but this is not assigned as error. When this statement was offered before the commissioner, appellant's counsel objected to its introduction because the appellant did not understand the interpreter, and also because it was obtained by duress. The Chinese interpreter, the stenographer, and the immigration inspector who conducted this examination were examined at length before the commissioner, and all the circumstances attending this examination were inquired into. The commissioner evidently found that the appellant did understand the interpreter and his statements were not made under duress.

At the examination by the inspector the

following questions were asked and answers given through an interpreter:

"Q. Where did you get the name of Ah Lin? A. My father died when I was a baby, and an American fellow raised me and gave me that name.

"Q. What is your present age, occupation, and address? A. Age 40; laundry-man; 46 Astor street, Boston, Mass.

"Q. Where were you born? A. Here in the United States.

"Q. Where? A. I don't know.

"Q. How do you know you were born in the United States? A. The person that raised me told me.

"Q. Who was the person that raised you? A. I don't know his name."

[3] Deportation proceedings are in their nature civil, and therefore the constitutional safeguards thrown about the accused in a criminal case do not apply to them. United States v. Hung Chang (C. C. A.) 134 F. 19; Bak Kun v. United States (C. C. A.) 195 F. 53; Bilokumsky v. Tod, 263 U. S. 149, 157, 44 S. Ct. 54, 68 L. Ed. 221. Before the examination he was told by the inspector that the answers made by him must be made voluntarily, and that they might be used against him. After the inspector, interpreter, and stenographer had testified, no objection was made by the appellant's counsel to the introduction of the transcript of the stenographer's notes of the examination, and he stated to the commissioner that he had no objection to counsel for the United States putting in the statement in proper form, but objected to his reading the questions and answers and interrogating the appellant in respect to them. That the commissioner found that the appellant understood the questions that were asked him by the inspector is a reasonable inference to be drawn from the following statement made by him: "If I found as a fact that he did not understand them, of course I should exclude it, but there is no law that says they should be excluded.

[4, 5] Although the arrest made by the police officers was illegal, the statements made by the appellant were properly admitted, provided the commissioner found, as he must have, that the appellant understood the interpreter and made them freely. As the question of their admissibility is not raised by any assignment of error, it is not before us.

The only witness offered to corroborate the appellant's statement that he was born in Oroville was Moy Pok, who testified that he was present in Oroville, Cal., at the shaving feast, soon after the birth of the appellant; but he was confronted with his sworn statement before the immigration inspectors in 1912 when, holding a certificate as a Chinese laborer, he applied for a permit to go to China and return to this country. He then testified as follows:

"When I was either 18 or 19 years old, I landed in San Francisco, either K. S. 7 or 8. I lived in San Francisco only a few weeks, and then I came to Boston for about 5 years, 2 years in Allston, altogether. I was around Boston that time and its vicinity for about 10 years. Then I went to New Bedford for 9 years and have been in Providence ever since."

It was contended that the stenographer who took his statement made a mistake in transcribing his notes, and that the word "for" after Boston in the third line should read "after." The stenographer who took this statement and furnished a transcript of his notes was called, and testified that this transcript was a correct copy of his notes.

Three witnesses were called, who testified to statements made by the appellant in relation to the place of his birth—one who had known him in Boston 17 or 18 years, another who had known him about 15 years, and a third about 5 years.

The commissioner, in his memorandum decision, states:

"I am not satisfied, from the evidence of the defendant or of Moy Pok, that the defendant has been in Boston for 30 years, or that he was born in Oroville, Cal.

"There was no evidence, except the evidence of said Moy Pok, to establish the fact that the defendant had been in Boston for 30 years. * * * I find as a fact that, upon all the evidence, I am not satisfied that the defendant was born in the United States."

No testimony additional to that taken before the commissioner was taken in the District Court, and the judge of that court upon appeal makes the following statement in his opinion:

"But doubts as to the credibility of the testimony might well have been entertained by the commissioner. The testimony of the defendant is not altogether consistent with that which he gave before the commissioner when first arrested. According to statements made under oath by Moy Pok in 1912, this witness had never resided in Oroville, but had come to Boston shortly after landing in San Francisco. The record also suggests reasons why the testimony of the white witnesses might not have been fully persua-

sive. The questions argued on appeal were purely questions of fact, and the decision of the commissioner respecting these questions will be upheld, unless the evidence shows that they were clearly wrong. He has seen the witnesses, heard the testimony, and has decided upon the evidence that the defendant has not sustained his burden of showing that he is rightfully within the United States. I do not feel warranted in disturbing this decision."

[6] In Chin Bak Kan v. United States, 186 U. S. 193, 22 S. Ct. 891, 46 L. Ed. 1121, Chief Justice Fuller laid down this rule in a deportation case: "We are of opinion that we cannot properly re-examine the facts already determined by two judgments below." We go further than this, however, and state that after a careful study of the record we are not satisfied that the appellant has sustained the burden of proving that he is a native-born citizen of the United States.

The order of the District Court is affirmed.

ANDERSON, Circuit Judge (dissenting). This is another case of a Chinese person unlawfully arrested on Saturday afternoon, September 19, 1925; grilled in the police station, and imprisoned until the succeeding Monday, before any legal process for his exclusion was instituted. In essentials, it is on all fours with the Charley Hee Case, decided by this court May 17, 1927, 19 F.(2d) 335. In one minor technical point this case is stronger than the Charlie Hee Case, for at the trial before the commissioner the evidence of the appellant's statement, when under illegal arrest in the police station, was objected to.

In my dissent in that case I reviewed the law and the facts, reaching the conclusion that an appellate court ought not to determine the vital question of credibility on the basis of evidence extorted from a frightened Chinese when under unlawful arrest. The conditions import duress. In my view, no decision can properly be reached on a record so vitiated.

I adhere to the view stated in the Charlie Hee Case—that the decision below should be reversed, and the proceedings dismissed, without prejudice to the Government's right hereafter to test Ah Lin's right to be and remain in this country, by any lawful proceedings. Ungar v. Seaman (C. C. A.) 4 F.(2d) 80, 85; Whitfield v. Hanges (C. C. A.) 222 F. 745, 756; Colyer v. Skeffington, 265 F. 17, 78; In re Petkos (C. C. A.) 214 F. 978.