**UNITED STATES v. LEE HEE.**

No. 387.

Circuit Court of Appeals, Second Circuit.

July 26, 1932.

John S. McGovern, of Buffalo, N. Y., for appellant.

Richard H. Templeton, U. S. Atty., of Buffalo, N. Y. (Willard R. Chamberlin, Asst. U. S. Atty., of Buffalo, N. Y., of counsel), for the United States.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The defendant attempted to prove his right to remain in this country by his own testimony and that of other witnesses to the effect that he was born in the United States in 1892 of parents resident in San Francisco, Cal. To this testimony the District Court gave no credence because of evidence of prior admissions by Lee Hee that he was born in China and first entered the United States in 1918 as a seaman. This appeal challenges the admissibility of the government's evidence because of the way it was obtained.

On January 29, 1931, an immigrant inspector, Kingsbury, acting under instructions from his superior officer and upon information obtained from an anonymous source, proceeded to the room where Lee Hee lived in Elmira, and interrogated him. No warrant for Lee Hee's arrest had then been issued. According to Kingsbury's testimony, he informed Lee Hee of his official position and said he wanted to question him. Kingsbury says Lee Hee admitted he was born in China, and stated he had some kind of papers which he apparently proceeded to look for. Kingsbury also looked; he found in a suitcase an identification certificate issued in the name of Lee Kung by the Chinese consulate at New York on March 28, 1923, and stamped "Seaman." Lee Hee admitted to Kingsbury that the suitcase and the certificate were his, and explained that the consul had made a mistake in issuing the certificate in the name of Lee Kung. Kingsbury then told Lee Hee that he would take him to the police station for further questioning. While detained at the police station, he was subjected to an examination, under oath, by Immigrant Inspector Helmick, assisted by an official Chinese interpreter who wrote down the inspector's questions and Lee Hee's replies. The report of this examination purports to be signed by Lee Hee by his mark. It

reiterates the admissions made to Inspector Kingsbury and adds the additional facts that his parents never resided in the United States and that he first entered the United States in 1918 when he was paid off as cook on a British freighter, and that he had remained in the United States thereafter, obtaining employment as a cook in various restaurants. Upon the basis of these admissions, Kingsbury, on the following day, obtained a warrant of arrest and initiated these proceedings before a United States commissioner at Elmira.

The written report, identified by the testimony of Helmick and the Chinese interpreter, was received in evidence by the commissioner and by the District Court. The identification certificate discovered by Kingsbury was also received as an exhibit. Testifying in his own behalf, Lee Hee repudiated the admissions made during his examination in the police station; he testified he was so scared that he did not know what he had said. As to the certificate, he denied it was his, denied the admissions regarding it to which Kingsbury testified, and said that Kingsbury had found it in an adjacent room occupied by Lee Kung. Before the commissioner Lee Hee had testified that he did not know where the certificate came from and had never seen it "before today." Objection to the admission in evidence of the report of Lee Hee's examination was made upon the ground that it was secured by an illegal arrest, and objection to the identification certificate upon the ground that it was obtained by an illegal search and seizure.

■ It must be conceded that the arrest and detention in the police station were illegal. The statute contemplates an arrest "upon a warrant issued upon a complaint, under oath." 8 USCA § 282. Here the arrest preceded the warrant. But it does not necessarily follow that a statement voluntarily made by a person illegally arrested cannot be used against him at a judicial hearing in which he is represented by counsel and given the opportunity to cross-examine witnesses and to offer additional testimony in his own behalf. Proceedings for the deportation of aliens are of a civil rather than criminal character, so that the constitutional guaranty against self-incrimination has no application here. Fong Yue Ting v. United States, 149 U. S. 698, 730, 13 S. Ct. 1016, 37 L. Ed. 905; United States v. Hung Chang, 134 F. 19, 25 (C. C. A. 6); Ah Lin v. United States, 20 F. (2d) 107, 110 (C. C. A. 1); Bilokumsky v. Tod, 263 U. S. 149, 154, 44 S. Ct. 54, 68 L.

Ed. 221. Even in criminal cases a confession voluntarily made by a person under illegal arrest is generally held admissible. Balbo v. People, 80 N. Y. 484, 499; People v. Trybus, 219 N. Y. 18, 113 N. E. 538; State v. Raftery, 252 Mo. 72, 158 S. W. 585, 588; State v. Westcott, 130 Iowa, 1, 104 N. W. 341, 343; Gilmore v. State, 3 Okl. Cr. 434, 106 P. 801, 27 L. R. A. (N. S.) 151; Ivey v. State, 4 Ga. App. 828, 62 S. E. 565; 2 Wigmore, Evidence (2d Ed.) § 823(b). The common-law rule did not exclude pertinent evidence because it was illegally obtained, nor does the fact that federal officers have procured evidence by conduct morally wrong bar its use in courts of the United States. Olmstead v. United States, 277 U. S. 438, 467, 468, 48 S. Ct. 564, 72 L. Ed. 944, 66 A. L. R. 376. Hence, if Lee Hee's statement was made without compulsion, we think the illegality of his arrest does not render it inadmissible. The following authorities afford direct support for this conclusion: Au Wee Sheung v. United States, 44 F. (2d) 681 (C. C. A. 7); Guan Lee v. United States, 198 F. 596 (C. C. A. 7); Prentis v. Seu Leung, 203 F. 25 (C. C. A. 7); United States v. Hung Chang, 134 F. 19 (C. C. A. 6); Bak Kun v. United States, 195 F. 53 (C. C. A. 6); Ah Lin v. United States, 20 F. (2d) 107, 110 (C. C. A. 1); United States v. Chan Nom Gee, 47 F. (2d) 758 (D. C. W. D. Wash.); La Buda v. Karnuth, 47 F. (2d) 944 (D. C. W. D. N. Y.), affirmed without opinion in 47 F. (2d) 945 (C. C. A. 2). See, also, Chan Wong v. Nagle, 17 F. (2d) 987 (C. C. A. 9). In Bilokumsky v. Tod, 263 U. S. 149, 155, 44 S. Ct. 54, 56, 68 L. Ed. 221, Mr. Justice Brandeis said that "mere interrogation under oath by a government official of one lawfully in confinement is not a search and seizure." We do not think that this implies the converse, although Judge Anderson so argued in a forceful dissenting opinion in Charley Hee v. United States, 19 F. (2d) 335, 340 (C. C. A. 1). In a similar case he again dissented. Ah Lin v. United States, 20 F. (2d) 107, 111 (C. C. A. 1). The language of Judge Sanborn in Ungar v. Seaman, 4 F. (2d) 80, 84 (C. C. A. 8), though the case is distinguishable, is also relied upon by the appellant. Aside from the three opinions last mentioned, nothing contrary to the general current of authority has come to our attention. While not unmindful of the possibility that an overzealous official may extract from an alien terrified by an illegal arrest damaging statements which are not true, we do not think voluntary statements understandingly made should be excluded

merely because procured during an unlawful detention.

There is nothing in the record to suggest that any violence, intimidation, or coercion was exerted during Lee Hee's examination in the police station. He says he was so frightened that he did not know what he was saying, but it is clear he understood the questions put to him by the Chinese interpreter. Indeed his answers at the police station only amplify and corroborate the admissions made in response to inspector Kingsbury's questions before he was placed under arrest. That an answer given before there has been time for reflection or consultation is likely to be the truth is well recognized. United States v. Lem You, 224 F. 519 (D. C. S. D. N. Y.); United States v. Moy Toom, 224 F. 520 (D. C. S. D. N. Y.); United States v. Hom Lim, 223 F. 520 (C. C. A. 2). Lee Hee had an opportunity to cross-examine the officers who interrogated him and to adduce evidence, if any there was, that his statements were not made understandingly or voluntarily. Nothing of the sort appears. We hold that the evidence of his admissions was properly received in evidence.

■ The next contention relates to the use of the identification certificate found by Inspector Kingsbury. Rule 24 of Rules of October 1, 1926, Governing the Admission of Chinese, provides that inspectors shall examine Chinese persons not known to be legally entitled to remain in this country "and shall inspect the certificates of residence or other papers found in the possession of such Chinese and conduct such examinations as may be necessary to determine the identity of the Chinese as the proper holders of such papers or to determine the status of such Chinese when no papers are presented." It cannot be successfully maintained that this rule gives an inspector a general right to rummage through the possessions of a Chinese without his consent in search of papers. In Bilokumsky v. Tod, 263 U. S. 149, it was said at page 155, 44 S. Ct. 54, 56, 68 L. Ed. 221: "It may be assumed that evidence obtained by the Department through an illegal search and seizure cannot be made the basis of a finding in deportation proceedings. Compare Silverthorne Lumber Co. v. United States, 251 U.

S. 385, 40 S. Ct. 182, 64 L. Ed. 319 [24 A. L. R. 1426]; Gouled v. United States, 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647."

■ A few cases in the lower federal courts have so held. United States v. Wong Quong Wong, 94 F. 832 (D. C. Vt.); Colyer v. Skeffington, 265 F. 17, 24-28 (D. C. Mass.), reversed on other grounds in 277 F. 129 (C. C. A. 1); Ex parte Jackson, 263 F. 110 (D. C. Mont.); see, also, 34 Harv. L. Rev. 361, 376. But, granting that Kingsbury obtained the certificate by an illegal search and seizure, the question still remains whether the appellant may assert that his rights were invaded when he has disclaimed ownership of the certificate and denied that it was taken from his possession. Before the commissioner he testified that he had never seen the certificate until it was presented to him at the trial; before the District Judge he testified that the certificate was found in a room which did not belong to him but to Lee King (Lee Kung). Although Kingsbury said he found the certificate in a suitcase which Lee Hee admitted was his, the latter expressly denied that it came from his suitcase. He takes a position wholly inconsistent with the claim that his constitutional right was violated, and asserts facts which make the document competent evidence as against him. It is well settled that the right to object to evidence illegally obtained is personal to the one aggrieved. In re Dooley, 48 F.(2d) 121 (C. C. A. 2); Moy Wing Sun v. Prentis, 234 F. 24 (C. C. A. 7); Tsuie Shee v. Backus, 243 F. 551 (C. C. A. 9); McMillan v. United States, 26 F.(2d) 58 (C. C. A. 8); Connolly v. Medalie, 58 F.(2d) 629, decided by this court May 16, 1932. Lee Hee has never accepted as true the inspector's testimony that the certificate was in his possession, but wants to secure the rights of a possessor while avoiding the perils of that rôle. As we said in the case last cited, this cannot be done; "he must choose one horn of the dilemma." He has chosen the horn which makes the evidence competent.

There being no error in the reception of the government's evidence, the record is sufficient to sustain the District Court's finding of alienage.

Order affirmed.