Cooke, J. (concurring in part and dissenting in part).
I
I agree with the court’s disposition of the appeal from that portion of the order of the Appellate Division which reversed defendant’s conviction of the murder of her infant son and dismissed that count of the indictment.
II
With respect to the manslaughter count, I would affirm the order of the Appellate Division. There is reason for grave concern because of the rule formulated by the majority for the review of “nonconstitutional” errors and its application to this case.
As to errors of constitutional dimension, the majority recognizes the standard of Chapman v. California (386 U. S. 18, 24), that before a constitutional error can be held harmless the court must be able to declare a belief that it was harmless beyond a reasonable doubt. This standard is followed by the declaration of “a parallel, and in some instances an over-
*244 lapping doctrine, also of constitutional proportions, namely, the right to a fair trial,” such that “ if in any instance, an appellate court concludes that there has been such error of a trial court, such misconduct of a prosecutor, such inadequacy of defense counsel, or such other wrong as to have operated to deny any individual defendant his fundamental right to a fair trial, the reviewing court must reverse the conviction and grant a new trial, quite without regard to any evaluation as to whether the errors contributed to the defendant’s conviction ” (emphasis supplied) (p. 238). As to “nonconstitutional errors ”, the majority establishes (p. 242) the further precept that, if “an appellate court has satisfied itself that there was overwhelming proof of defendant’s guilt,” further inquiry must be made by it “ as to whether * * * the error infected or tainted the verdict ’’ and " an error is prejudicial in this context if the appellate court concludes that there is a significant probability, rather than only a rational possibility, in the particular case that the jury would have acquitted the defendant had it not been for the error or errors which occurred.”
While the effort to harmonize the Constitutions, the statute and judicial pronouncements and to render a yardstick to guide courts in the conduct of criminal trials and in reviewing alleged errors therein is creditable, it is urged respectfully that the majority’s opinion does not accomplish that result. To begin with, what has evolved is indeed a trifurcated standard for appellate scrutiny. There is a fork of error “ harmless beyond a reasonable doubt ” as to “ constitutional ’ ’ deprivations, another “ also of constitutional proportion, namely, the right to a fair trial * * * quite without regard to any evaluation as to whether the errors contributed to the defendant’s conviction ” (pp. 237-238) and a third with a test of “ significant probability ” applicable to nonconstitutional errors. This three-pronged measure will be difficult to administer and apply and, instead of clarity, confusion comes forth.
Although the decision of the Supreme Court in Chapman did not purport to establish a harmless error rule for application to all errors, there are strong reasons for applying the “harmless beyond a reasonable doubt” standard to all errors affecting the substantial rights of a party which arise under the State Constitution or State law, as well as to those which *245 emanate from the Federal Constitution. Such a rule would not be inconsistent with the mandate of CPL 470.05 (subd. 1), which merely directs an appellate court to determine an appeal without regard to technical errors which do not affect the substantial rights of the parties.
First, if the nature of the error is constitutional, it is going to be difficult, if not impossible, to determine which test shall be applied. Should it be according to the Chapman scale where “ the court must be able to declare a belief that it [the constitutional error] was harmless beyond a reasonable doubt ’ ’ ? Or, should there be a weighing to ascertain if there has been a ‘ ‘ full observance and enforcement of the cardinal right of a defendant to a fair trial * * * quite without regard to any evaluation as to whether the errors contributed to the defendant’s conviction ”¥ (p. 238). Although it is obvious that the criteria are not the' same, the majority does not supply the answer.
Second, to establish a coexisting rule that where there has been denied to “ any individual defendant his fundamental right to a fair trial, the reviewing court must reverse the conviction and grant á new trial, quite without regard to any evaluation as to whether the errors contributed to the defendant’s conviction” (p. 238) is incongruous, .since generally one of the most significant inquiries to be made in ascertaining whether a fair trial has been accorded a defendant concerns the effect of any error, misconduct, inadequacy or wrong upon the verdict. Such a rule would unnecessarily place in jeopardy a host of convictions.
Third, it is apparent from a reading of Chapman v. California (386 U. S. 18, 24, supra) that the test of “harmless beyond a reasonable doubt ’ ’ was adopted as a corollary to the reasonable doubt standard applicable to criminal cases. By adopting a test regarding so-called ‘ ‘ nonconstitutional ’ ’ errors which requires “ a significant probability * * * that the jury would have acquitted.defendant had it not been for the error or errors which occurred ” (p. 242), the court is dangerously diluting the time-honored standard of proof beyond a reasonable doubt which has been a cornerstone of' Anglo-Saxon criminal jurisprudence. No one would dispute the statement that a defendant in a criminal case has a constitutional right *246 to foe proven .guilty beyond a reasonable doubt before he is deprived of his life, liberty or property (U.S. Const., 5th Amdt., 14th Amdt., § 1; N. Y. Const., art. I; In re Winship, 397 U. S. 358, 363-364; La Fave & Scott, Criminal Law, Hornbook Series, pp. 45-46; cf. Matter of Richard S., 27 N Y 2d 802 ; see CPL 70.20). Unless an appellate court can say that errors committed at trial, which affected defendant’s substantial rights, are harmless beyond a reasonable doubt, defendant’s right to that standard of proof can be severely prejudiced, the extent of the prejudice depending upon the nature of the error in the context of other proof and the circumstances of the case.
Fourth, while the conceptual distinction between constitutional and noneonstitutional errors is a real one, the differentiation is of dubious validity as applied to the appellate review process. As the history of the “ right-privilege ” distinction in law indicates, the process of ascribing labels to concepts from which serious consequences flow is one fraught with peril and one uniquely susceptible to semantic gamesmanship. (For a history of the right-privilege distinction see Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv. L. Rev. 1439.) Ultimately, the Supreme Court opted for a course of action where the consequences to the particular party, rather than the label attached, determined the scope of due process safeguards (see Goldberg v. Kelly, 397 U. S. 254, 262-263).
The pitfalls of utilizing the ‘ ‘ constitutional ’ ’ and ‘ ‘ nonconstitutional ” dichotomy to determine the standard of review are apparent. According to the rule enunciated by the majority, the “ harmless beyond a reasonable doubt ” test is applied where a constitutional error, other than one which denied the right to a fair trial, is involved; however, in a nonconstitutional error situation, the test of “ significant probability * * * that the jury would have acquitted ’ ’ (p. 242) but for the error comes into play. Given a case, like this one, where there is an accumulation of errors, or even in other situations involving a single error, the effect of which is such as to deprive a defendant of his or her constitutional right to a fair trial (Irvin v. Dowd, 366 U. S. 717, 722; In re Murchison, 349 U. S. 133, 136), even the most intense student of the law must wonder which standard is to be applied. Of course, if a single standard of harmless *247 error beyond a reasonable doubt is in force, such difficulties would not arise.
More fundamentally, a defendant’s constitutional right to a fair trial can be prejudiced equally by noneonstitutional errors as by constitutional errors. This is why it makes little sense to have a strict standard of review in one area and a looser one in the other. In the instant matter, for example, the constitutional error, which triggers the more exacting standard of review, was not of great significance in the context of the trial and was provoked to some extent by defendant’s action, as the majority recognizes. Far more serious, in my opinion, were the errors the majority labels as nonconstitutional. On this record, these and other errors cannot be shown to be harmless beyond a reasonable doubt. In any event, their effect was to deprive defendant of a fair trial and the conviction must be reversed (see People v. Trybus, 219 N. Y. 18, 21).
One of the major items of evidence received at the trial was an admission made iby defendant to Joseph Rorech in which she admitted killing her daughter. The majority does not deny that it was error to permit introduction of testimony that Rorech, an important prosecution witness, had been given a sodium pentothal (truth serum) test. It is difficult to imagine evidence that could have had as grave an impact upon the jury in their assessment of the credibility of the witness Rorech, to defendant’s obvious detriment. Under any view of the case, the error affected defendant’s “ substantial rights ” (CPL 470.05, subd. 1) to have the jury evaluate the believability of the witness without the distraction of totally irrelevant considerations injected by evidence erroneously received.
The prosecution’s theory was that Colabella was with defendant on the night her daughter was killed and helped her dispose of the body. The admission into evidence of proof regarding his failure to sign a waiver of immunity, when questioned by the prosecutor during the pretrial investigation of the case, was “ most improper ” and also affected defendant’s “ substantial rights ” .since, as observed by the majority in the Appellate Division, his refusal may well have been considered by the jury as an indication of defendant’s guilt (cf. People v. Ashby, 8 N Y 2d 238, 242-243; United States v. Sing Kee, 250 F. 2d 236, 240, cert. den. 355 U. S. 954). The existence of this *248 issue, involving indirectly at least the Fifth Amendment, has “ constitutional overtones ” (see Namet v. United States, 373 U. S. 179, 186—187; Grunewald v. United States, 353 U. S. 391, 423-424) and points up again the difficulty in assigning the labels employed by the majority.
Likewise, the seriousness of the error, in putting before the jury Colabella’s alleged admission to Sullivan that he had a girl friend, Alice, “who was in a jam,” and asking Sullivan to help get rid of a body, is readily apparent. Colabella denied not only knowing Sullivan but making the admission, and Sullivan was not called as a witness nor was an explanation given for the failure to call him. As pointed out in the decision under review, this impropriety was aggravated when “ (a) the prosecutor strenuously opposed a subsequent defense request for a charge that the jury could draw an unfavorable inference from the People’s failure to call Sullivan as a witness and (b) the court refused to so charge ” (41 A D 2d 933).
The trial was infected with further prejudicial error in placing before the jury the subject of defendant’s trip to the Bahamas with a married man. The only conceivable relevancy of this item was on the question of motive but testimony bearing on this subject would be incompetent since there was not a logical relation between it and the commission of the crime charged “ according to known rules and principles of human conduct ” (People v. Fitzgerald, 156 N. Y. 253, 258; Richardson, Evidence [Prince — 10th ed.], § 171). As noted recently in People v. Sandoval (34 N Y 2d 371, 376), “it must be recognized as inevitable * * * that evidence of prior criminal, vicious or immoral conduct will always be detrimental to the defendant.” Further difficulty is encountered regarding the introduction of evidence that, on the date of her alleged confession, defendant became extremely distraught upon reading a newspaper account of the arrests of 13 persons at the “Little Appalachian ” meeting in Queens and kept repeating a name. It turned out later that Colabella was not named in the news story nor was it his name which defendant repeated. This Mafia ‘ ‘ angle ”, introduced without relevance, was prejudicial and may have played an important part in the trial. One major witness, Sophie Earomirski, who allegedly saw defendant from a distance on the night of the crime carrying a bundle and overheard *249 an incriminating conversation, justified her failure to come forward promptly with her evidence on the grounds of fear. With the prosecutor’s injection of a spurious organized crime aspect to the case, in itself dangerous, her explanation very likely gained a credence it might otherwise have lacked.
The majority (p. 242) resolves the problem by ‘ ‘ excising both the evidence erroneously admitted (with respect to Rorech’s taking a truth test and as to Colabella’s refusal to sign a waiver of immunity) and the prosecutor’s interrogation of Colaibella (as to the latter’s damaging admission to ’ Sullivan) ” and by finding overwhelming evidence of guilt. Performing such radical surgery on the evidence fails to recognize sufficiently the danger of improperly influencing or " tainting ” the verdict by ‘ ‘ harmless errors ”. Jurors, hearing the events 'Unfolding in an emotion-charged atmosphere may very well impute greater importance to evidence erroneously received than is apparent by speculation of appellate courts, removed from the environment and reading cold print. Their assessment of such evidence may color their entire outlook of defendant’s legal position.
More importantly, however, it is not for this court to usurp the function of the jury and speculate whether, without this evidence erroneously admitted, the jury nevertheless would have acquitted (see dissent in People v. Catalanotte, 36 N Y 2d 192). What this court wrote in People v. Marendi (213 N. Y. 600, 619) many years ago is just as true today: ‘ ‘ where prejudicial matter is erroneously received in evidence on a disputed question of fact, its harmful character cannot be determined solely by the mere weight of competent evidence unless we are to resolve ourselves into a jury and, ignoring the finding upon incompetent evidence, substitute one upon the evidence which we may deem competent.” That two juries have found guilt is beside the point, just as is the fact that the both verdicts, up to this point, have been set aside by different courts. This court, following the first trial said (26 N Y 2d 319, 324): “ Although, as the People argue, the evidence is legally sufficient to sustain the verdict of guilt, it was not so overwhelming that we can say, as a matter of law, that the error [then under review] could not have influenced the verdict (Harrington v. California, 395 U. S. 250; Chapman v. California, 386 U. S. 18).” Emotions aside, *250 the failure to accord an accused á fair hearing violates even the minimal standards of due process regardless of the heinousness of the crime charged (see Irvin v. Dowd, 366 U. S. 717, 722, supra).
The fact is that different items of prejudicial matter were admitted arid were before the jury for its consideration. The character of the evidence was such that they may well have affected the jury’s evaluation of other items of evidence, to defendant’s detriment. Where these several major elements of evidence against defendant were tainted by error, it cannot be said that the case against defendant, although persuasive, was overwhelming and that a jury composed of honest, well-intentioned, and reasonable men and women could not have acquitted her.
I would affirm the order of the Appellate Division.
Chief Judge Breitel and Judges Jasen, Gabrielli and Wachtler concur with Judge Jones; Judge Cooke concurs in part and dissents in part and votes to affirm in a separate opinion in which Judge Fuchsberg concurs.
Order modified and case remitted to Appellate Division, Second Department, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.